## STAFFORD v. MAUS.

1. **Fraud:** CONTRACT: RESCISSION. False and fraudulent representations respecting the subject matter of a contract must have been material, and have referred to some particular in regard to which a known trust and confidence were reposed in the party making them, to warrant a rescission of the contract.

2. **Practice:** APPEAL. A party cannot avail himself of an appeal, prosecuted by the other party, to ask a review of that portion of the judgment adverse to himself.

3. ———: FORECLOSURE: SALE. Under a decree of foreclosure for failure to pay an installment of interest, the court may order a sale of the premises for the payment of the principal of the note, with a rebate of interest.

*Appeal from Henry Circuit Court.*

THURSDAY, MARCH 19.

THIS action was commenced in ordinary proceedings, on the 25th of August, 1870, to recover one year's interest upon a note for $24,000, dated January 1st, 1869, due on or before the first day of April, 1880, with interest from the first of April, 1869, payable annually.

The defendants filed their answer and cross-bill in equity, praying the cancellation of the note sued on, and the mortgage executed to secure the same, and alleging in substance that the note was given in purchase of section 17, and the southeast quarter of section 18, in township 72, range 5.

That plaintiff, with intent to cheat and defraud defendants,

represented that said premises lay in a body, six and one-half miles from the city of Mount Pleasant; that there was a large amount of hedge fence in a good state of cultivation thereon; that there was no road, and particularly no diagonal road, across the land in any manner separating the same; that there was on the land a valuable living stream of running water, sufficient at all times for a stock farm for the whole of said premises. The cross-bill alleges specifically the falsity of each of these representations, and states that the defendants offered to surrender the lands, and have the note and mortgage canceled.

At the time of filing their cross-bill defendants filed a motion to transfer the action to equity, which was sustained.

On the second day of February, 1871, plaintiff filed an amendment to the petition, alleging that the note was executed for the purchase money of the land above named, and that a mortgage was executed on said premises to secure the same. That there is due $1,440, with interest from April 1, 1870, and $1,440 will become due April 1, 1871. That 400 acres of the premises are improved with buildings, etc., thereon; that 640 acres are fenced, and that defendants have abandoned the premises.

Plaintiff prays for the appointment of a receiver, for judgment for $1,440 and interest at 6 per cent., and for such further sum as may mature on said note before decree, for a foreclosure of the mortgage, and a sale of the premises; and that the excess of proceeds of sale be applied to pay sums not due on said note with proper rebate, and for general relief.

On the 26th day of June, 1871, plaintiff filed an answer to the cross-bill, denying all its material allegations.

On the 30th of May, 1872, plaintiff filed an amendment to his petition, alleging that another year's interest has fallen due on the note, and that in order to preserve his security he was compelled to pay taxes on the mortgaged premises for the years 1869 and 1870, amounting to $401.02, and praying judgment for these sums.

The court decreed that the defendants are entitled to recover the sum of thirty-five hundred dollars, on account of the mat-

ters set up in the cross-bill. That the contract is valid and binding, and defendants áre not entitled to have the same rescinded. That the amount of interest which has not been paid on said note, together with the taxes paid by plaintiff on the mortgaged premises is $5205.03, leaving due plaintiff after deducting the damages, $1,705.03, and that the mortgaged premises should be sold to satisfy the same.

That there are other payments secured by the same mortgage not yet due, viz.: the sum of $24,000, with 6 per cent. interest, payable annually.

That upon the sale of said mortgaged premises, after first satisfying the judgment herein rendered, the surplus be applied as follows: First, in payment of the principal and interest from April 1, 1872, of the note set out in plaintiff's petition; and second, that if any balance remain due after satisfying said note and interest, such balance be paid defendants. The plaintiff excepted to the decree so far as it awards the defendants damages, and the defendants excepted to the remainder. The defendants alone appeal.

*John S. Woolson*, for appellant.

*H. & R. Ambler*, for appellee.

DAY, J.—A full review of the evidence, which covers nearly one hundred pages of the abstract, is not practicable. A careful reading and re-reading of it has led us to concur in the opinion that the court below rightly decided that defendants were not entitled to a rescission of the contract. We will merely state in brief, some of the considerations upon which our conclusion is based.

1. FRADULENT representation: contract: rescission.

In October, 1868, Lewis H. Maus was in Iowa looking for land on which to settle. At that time he passed by the land in question, and over a portion of the same, and learned from plaintiff's brother then living on the land that it was for sale, and that the price asked was $30 an acre. At the same time he procured plaintiff's address.

He thereupon wrote the plaintiff the following letter:

Stafford v. Maus.

WASHINGTON, Oct. 20th, 1868.

*Mr. J. H. Stafford:*—I am out here looking for some land to settle on. Have been looking at yours, and talked some with your brother yesterday. He was loading up to move off to-day, and said your land is for sale. Will you sell me one piece next to Zeiglers, as I understand it to be ; the separate fourth, 160 acres, and at your lowest price. I wish to improve it next season, and what terms, &c., and then if I can raise parties to go in and keep the whole, what will be the best terms, and the lowest prices? Please answer first mail.

Direct,                                                 LEWIS H. MAUS.
(That is my present home.)   ,                 *Erie City, Penn.*

The plaintiff, not fully understanding the place to which a reply was to be addressed, laid this letter aside and did not answer it.

About Nov. 12, 1868, he received from the other defendant, Geo. V. Maus, the following letter:

ERIE, PA., Oct. 29, 1868.

*J. H. Stafford, Esq.*
          *Casstown, Miami County, Ohio.*

DEAR SIR: My father was out in Henry county, Iowa, a short time since, and learned from your brother whom he saw there, that you were desirous of selling some land you have there, which was said to be about 800 acres. My father wrote you from Iowa with reference to the property, with request that you would reply to his address at Erie, Pa., but as yet we have heard nothing from you. Please let us know whether you desire to sell, and if so your lowest price per acre, and terms either for a part or the whole tract. If we buy we expect to fence and improve at once.

Respectfully Yours,                         GEO. V. MAUS.

To this letter the plaintiff replied as follows:

CASSTOWN, OHIO, Nov. 14th, 1868.

*Geo. V. Maus, Esq., Erie, Pa.*

DEAR SIR:—Yours of the 29th Oct. is at hand. I suppose I received a letter from your father some three weeks since,

but I could not make out the signature satisfactorily, nor where to direct my letter, so I did not reply. I was then about to go to Iowa. I returned home last evening from Iowa. In reference to my land in Henry county, Iowa, I own 800 acres there. I bought it, thinking I would go to it and improve it, but my family being small and not willing to go, and considering I am well situated here, where I reside, I purpose on selling the 800 acres. I have been offered more than my price if I would sell it in parcels or in 160 acre lots. I don't wish to sell it in parcels. I think it altogether a valuable property, but as your father has seen it, it is not necessary for me to say more on that subject. My price is $30.00 per acre. The buyer can have any time he wishes to make his payments, with interest at 6 per cent per annum. I don't need the money nor do I expect to very soon. While I was there last week, I thought to myself if I was only a young man, what a nice thing I could make of it, to go there and raise cattle and sheep, and to farm. I could use all kinds of farm machinery. Not a stone, not a stump, briar, elder or willow to impede the progress. It is about $6\frac{1}{2}$ miles from Mount Pleasant, where there is a good college, and it is some twenty-five miles from Burlington, where there is every facility for transportation by rail or water. The railroad from Burlington to Mount Pleasant is only $4\frac{1}{2}$ miles from it direct. There is one quarter under cultivation, fenced. On another quarter is the house with a good cellar the size of the house, walled with quarry stone. The house is well finished and painted; with three rooms below and two up stairs, complete window blinds to each window I think. There are some five acres enclosed at the house; a young orchard near the house, some evergreen shrubbery, some grape vines, and some small fruits, plenty of good water for house use and barn use. On the improved quarter there is constant water. Near the house is some thirty acres that have been plowed some time but not fenced. The right of the land is unquestionable. There is a farm near to it, Mr. Coffman's, sold recently for $50.00 per acre. All the difference between them is Coffman's is fenced. There is around the 800 acres some 880 rods

of fence owned by several persons. If you think of buying, let me know soon, as I am on a trade with three others. Possession can be had at any time. I have some 400 bushels of corn there in the crib that can be had at 30 cents per bushel. It is good, and I have no use for it.

J. H. STAFFORD.

On the 17th of November, G. V. Maus replied as follows:

*J. H. Stafford, Esq., Casstown, Ohio.*

DEAR SIR:—Your letter of the 14th inst. received this morning. My father is now absent on business at Philadelphia and Harrisburg, but will return in course of a week or two. In reply to yours, &c., we will accept it. That is, take the whole 800 acres, and wish the corn you have there, at the price you mention, 30 cents per bushel. Please let me know whether you have any other grain you will sell there, or any farming implements, and if so, the price of same, and oblige,

Yours Truly, &c.,                    GEO. V. MAUS.

Here is a distinct offer and an acceptance in writing of the terms proposed. Up to this time the parties had not met. L. H. Maus testifies in much detail as to verbal representations subsequently made by plaintiff, but he discloses in his cross-examination that he has never seen plaintiff, and it is apparent that all his testimony relating thereto is mere hearsay. Geo. V. Maus testifies that in Jan., 1869, he called upon plaintiff at his residence for the purpose of learning definitely his price, terms, etc., and the nature and character of his land, and that then plaintiff made various representations respecting the roads, etc., and was informed that defendants relied solely upon the representations of plaintiff in making the purchase. This the plaintiff denies. The burden of proof to establish the fact is upon the defendant. It is not consistent with his letter of acceptance of November 17th, that he should afterward be inquiring price, terms and quality of land. The weight of evidence therefore, supports the conclusion that the representations which were made, are contained in the letter of Nov., 14th. A considerable portion of the testimony regards a diag-

onal road supposed to exist over a part of section 17. This road has never been opened, and it is doubtful whether its location can be determined, or whether it ever had any legal existence. But as no reference is made to it in the letter, it may be regarded as out of the case.

A considerable other portion of the testimony relates to the existence of small patches of willow and hazel upon the premises. But as no complaint is made in the cross-bill of these, they need no particular notice. It is sufficient to say that the willows existed only in small patches, that they were what is known as prairie buck willows, about six to ten inches high, and that they are entirely destroyed by the first ploughing, and that the hazel was not of sufficient quantity to affect in any material manner the value of the land. As to the distance from Mount Pleasant, the weight of the evidence is that the statement made does not materially vary from the real distance. And as regards the hedge, the representation made was that it was owned by other persons, and not that it belonged to the land. There remains only the representation as to the water, which was stated to be constant. The evidence shows that it is abundant in the spring, that it grows scarce in the fall, and that when the season is more than usually dry, the water except in the wells disappears entirely. It is claimed that plaintiff knew the water was considered very material, inasmuch as defendants wished the premises for a stock farm. But up to the time the plaintiff's offer was accepted, no intimation was made that defendants desired it for any other than ordinary agricultural purposes. A misrepresentation, in order to entitle a party to relief on the ground of fraud, must be material, and it must be in something in regard to which a known trust and confidence is placed in the party making it. 1 Story's Equity, section 197. All the circumstances in this case rebut the presumption that plaintiff believed such confidence and trust were reposed in him.

He knew that one of the defendants had been west seeking to buy land, that he had looked at the land in question, and it was but natural to suppose that he made a full examination before writing the letter dated at Washington. Further, the

defendant L. H. Maus testifies that he learned of the falsity of Stafford's representations in March, 1869, on taking possession of the land and beginning work. Yet he remained upon the land until Nov., 1870; broke about 250 acres, built nearly four miles of fence, and repaired the dwelling house, and no complaint was made as to anything excepting the diagonal fence, until March, 1870, and it does not clearly appear that anything else was relied upon as a ground of relief, until the cross-bill was filed. This conduct is not consistent with the claim that the representations materially induced the contract.

Upon the whole case we are well satisfied with the action of the court, in refusing to rescind the contract.

II.  The court allowed the defendants $3500, because of the representations set forth in the cross-bill. We are

2. PRACTICE: appeal.

of opinion that, notwithstanding this is an equity case, triable here *de novo*, the plaintiff cannot have a review of this judgment of the court without prosecuting an appeal therefrom.

III.  It is claimed that the decree should have been for the sale only of sufficient of the mortgaged premises to satisfy the amount of interest due at the time of the decree.

We think however, the action of the court in ordering the sale of the premises for the payment of the prin-

3. ——: fore-closure sale.

cipal of the note, with a rebate of interest, is justified by section 3667 of the Revision, and see *Carleton v. Byington*, 24 Iowa, 175. There is an especial fitness in such decree in this case, since the mortgagors have abandoned the mortgaged property, and it is in the hands of a receiver.

AFFIRMED.