ANDREW v. CONCANNON *et al.*

1. **Express Trust in Land**: EVIDENCE TO ESTABLISH. In this action plaintiff and intervenors sought to show that defendant had an equitable interest in the land in question, and that his co-defendants held the legal title for him, and that this was done for the purpose of delaying and defrauding defendant's creditors, but *held* that the evidence, which was all parol (see opinion), tended only to establish an express trust, if anything, and that, under section 1934 of the Code, it could not be considered for that purpose.

2. **Appeal**: FROM FINDING WITHOUT JUDGMENT. An appeal does not lie from a finding by a court on which no judgment is entered.

*Appeal from Audubon District Court.*—HON. A. B. THORNELL, Judge.

FILED, DECEMBER 20, 1888.

THE facts are stated in the opinion.

*F. L. Boynton* and *Nash, Phelps & Green*, for appellants.

*H. F. Andrews* and *Willard & Willard*, for appellees.

SEEVERS, C. J.—The plaintiff and intervenors are judgment creditors of the defendant Concannon, and the appellants are the holders of the legal title to certain real estate which the plaintiff and intervenors claim in equity belongs to Concannon, or in which he has an interest ; and they substantially unite in this action, and seek to subject said real estate to the payment of

their judgments. The court found that the land in equity belonged to Concannon, but that he was indebted to the appellants therefor. The court also found that the plaintiff and intervenors were entitled to liens on the land for the amount due them on their respective judgments, and entered judgment accordingly. The court further found that Concannon was indebted to the appellants on certain chattel mortgages, or the indebtedness secured thereby, but no judgment was rendered therefor, and no appeal has been taken from the finding, conceding that one could be taken. The pleadings are quite lengthy, and it is not deemed necessary to set them out. Substantially, the plaintiff and intervenors base their right to the relief asked on three grounds, which may be sufficiently stated as follows: *First.* That Concannon purchased the land, or the appellants did so for him, and took the title in the name of the latter; and that it was agreed between the parties that the appellants would convey the land to Concannon when he paid the agreed price therefor. *Second.* That the appellants agreed to sell the land to Concannon for a named price. *Third.* That the arrangement or contract entered into between Concannon and the appellants in relation to the land was made for the purpose of hindering and delaying the creditors of the former.

The evidence in relation to the claimed contract for the land is brief, and, except in a single particular, is not materially conflicting. The greater part of the evidence relates to certain chattel mortgages executed by Concannon to the appellants; the contention between the parties being whether there was any consideration therefor independent of the purchase price of the land, and whether there was or was not any such consideration, and what amount was due upon the indebtedness so secured. For reasons hereafter stated, we are not required to determine such question, and therefore shall only refer to evidence bearing upon the land transaction. It is conceded, or at least not controverted, that the land was purchased and conveyed to appellants, and they paid the entire purchase price or consideration

therefor. This was in 1880. It is also true that Concannon was what is termed a "squatter" on the land, at the time and prior to such purchase; that is, he was in possession, using and controlling it as his own, but it in fact belonged to other persons. There were one hundred and sixty acres or a fraction more, and Concannon purchased and paid for forty acres thereof, and the same was conveyed to him. There is no controversy in this action about this forty. Concannon desired to purchase the residue, and testifies that he did so of Fiscas, who was agent for the owner, and that Payne gave him a check to pay for it; but, something being wrong about the check, he returned it, and then he and one of the appellants went together, and the money for the land in controversy was paid by the appellants. Concannon further testifies: "The contract was that I bought the land. I said before, I bought it and I paid it. It must have been so, because I bought the land myself, and he was to pay for it; and I was to give him ten per cent. interest on it. I didn't buy the land of Mr. Payne at ten dollars per acre; I did not rent it of him for one dollar an acre and pay taxes. I admit he paid for the land. I was to pay him ten per cent. interest on it." Concannon further testifies, in answer to questions asked him, as follows: "What arrangement did you have with Mr. Payne about buying it? Nothing at all, only I was to pay him interest on it. What did he say about you could have the land? He told me I could have it at ten per cent. interest on it; and paying the tax." Conceding this evidence to be true, and that there was a contract or arrangement, as testified to by Concannon, it is undoubtedly true that such arrangement was made prior to the payment for the land and the delivery of the conveyance, or possibly at the same time. There is no evidence tending to show that there was any contract or arrangement made subsequent to the time above stated.

I. The evidence of Concannon tends to establish an express trust, but this cannot be done by parol.

**1. EXPRESS trust in land: evidence to establish.** Such a trust must be evidenced in the same manner as conveyances of real estate. Code, sec. 1934. As this was not done, the trust cannot be regarded as having been established, and therefore cannot be enforced. This seems so clear as to leave no room for controversy.

II. Has a valid sale or arrangement to sell the land been established? There are grave doubts whether the evidence of Concannon, if there was nothing contradictory thereto, does so. One of the appellants testifies as follows: "I bought the lands in controversy, and the deeds were taken in the names of myself and brother. We never sold the same. When I purchased this land on behalf of myself and brother, Concannon was with me. It happened in this way: In the year 1880, Concannon asked me and my brother to purchase the land for him, and lend him the money to pay for it. This we declined to do, but we told him that we would purchase it for ourselves, and let him occupy it as a tenant, at a rent which would equal ten per cent. on the purchase money, he paying taxes. We also told him, if ever he was in a position to purchase the land, we would sell it to him for the same sum that we should give for it." The evidence of the other appellant is corroborative of the foregoing. The only material difference between the foregoing evidence and that of Concannon is whether the latter occupied the premises as a renter, for it is immaterial who actually bargained for the land. The evidence of the appellants relates to a time anterior to the purchase, and tends to establish a trust, if anything. Clearly it does not establish a sale, much less one that can be enforced, for no part of the purchase money was paid by Concannon, nor was possession taken under the contract. The latter simply remained in possession. The evidence does not as a whole, as we think, establish a sale or agreement to sell, but an express trust, if anything; and for this purpose the evidence is incompetent.

III. The judgments under which the plaintiff and intervenors claim were not recovered until after the

land was purchased, and there is no evidence tending to show that they were creditors of Concannon at that time, and certainly there is no evidence tending to show that the transaction in relation to the land was entered into for the purpose of hindering or delaying subsequent creditors; nor do we think there was any such intent as to existing creditors.

IV. It is insisted, as we understand, that the appeal should be dismissed, or appellants denied relief in this court, because it is said the appeal is not from the whole judgment. It is true there was no appeal from the finding of the court as to the amount due on the chattel mortgages, but, as no judgment was rendered for such amount, we are at a loss to know how an appeal could be taken. Such finding is not a final order, and, unless followed by a judgment or something equivalent thereto, an appeal therefrom could not be taken; but, if it could, the appellants had the right to appeal from a distinct and specified portion of the judgment. It is also insisted that the appellants are not entitled to a trial anew in this court, but we think differently. The judgment of the district court must be reversed, and appellants are entitled to a decree in this court, if they so elect.

REVERSED.

*2. APPEAL: from finding without judgment.*