JOSIAH DAY, Appellant, v. ANN GOODWIN, Appellee, H. M. STEVENS, JOSIAH DAY, Substituted as Plaintiff, v. ANN GOODWIN, RICHARD GOODWIN, *et al.*, Appellees.

Judgment Construed: EFFECT. A decree in a suit in which plaintiff
1 asks, as against all defendants, a judgment of foreclosure, is

good to some extent as against all the defendants, in a proceeding not regularly attacking it, but expressly ignoring or denying its existence; the entry being entitled against all the defendants, the decree reciting due and legal service on them, adjudging them in default, finding that plaintiff is entitled to foreclose as prayed for, and ordering the land sold, though personal judgment is given only against one, and his right of redemption alone is cut off.

ACTION TO ANNUL. All the parties to a judgment should be made parties to a proceeding either in equity or at law, under the statute, to annul it.

COLLATERAL ATTACK. Service appearing on the face of the record to be good, and the court having taken jurisdiction, the judgment is not void; and the intrinsic facts relied on to defeat the service can be shown only on direct attack of the judgment.

RULE APPLIED. A judgment rendered in a foreclosure action is not void, although the notice of the pendency of the foreclosure proceedings was served upon one who had previously been adjudged insane, without at the same time leaving a copy for her with her husband, with whom she resided, and who was likewise a party to the action, and served with process on the same occasion.

Appeal: REVIEW. Plaintiff having asked for a *nunc pro tunc* order requiring the clerk to record a former decree, and defendant moved for leave to answer, defendant, not having appealed, cannot, on the appeal of plaintiff from the denial of the order, claim any affirmative relief as to or by reason of the motion, relative to which the lower court took no action.

Nunc pro tunc Orders. Where no rights of third parties have intervened or will be affected thereby, plaintiff is entitled to a *nunc pro tunc* order requiring a clerk to record a decree which has been prepared and signed by the judge, and given to the clerk, who filed, but failed to record it.

*Appeal from   Calhoun   District   Court.*—HON.   Z.   A. CHURCH, Judge.

THURSDAY, JANUARY 20, 1898.

THESE cases were submitted and will be considered together. The matters involved are so intimately related that they, in effect, present but one cause. The facts will be found in the opinion. There was a decree and judgment below for defendants. Plaintiff appeals. —*Reversed.*

*M. W. Frick* and *H. S. Winslow* for appellant.

*Botsford, Healey & Healey* for appellees.

Waterman, J.—On October 3, 1885, the defendants Ann Goodwin and Richard, her husband, being indebted to one H. M. Stevens, executed to him their promissory note for the amount, and also a mortgage securing it, on the real estate in controversy, situated in Calhoun county, Iowa. An action was brought in the name of Stevens, as plaintiff, and against the Goodwins and one Horton and one Dautremont, as defendants, to foreclose this mortgage, at the February term of the Calhoun district court. The proceedings thereafter in said foreclosure, in the order in which they occurred, are as follows: Complete record entry: "And now, to-wit, on this twentieth day of February, A. D. 1889, the same being the second day of the regular February, 1889, term of said court, Richard Goodwin, defendant, files answer. Default. Personal service, Ann Goodwin, A. A. Horton, L. A. Dautremont. Now, to-wit, on this twenty-first day of February, A. D. 1889, the same being the third day of the regular February, 1889, term of said court, reply to answer of Richard Goodwin. Defendant Richard Goodwin files motion to take evidence in form of depositions. Motion sustained, and the evidence of defendant is ordered to be in the form of depositions, and the plaintiff, at his election, may take his either in form of depositions or any way on the time of trial. Judgment for amount of one note and attorney's fees against Ann Goodwin, defendant. To all defendant excepts, Richard Goodwin." This entry seems to be but a copy of the entry in the judge's docket. On February 20, 1889, a decree was signed by the judge, reciting due service of original notice upon Ann Goodwin, Horton and Dautremont, giving judgment against

Ann Goodwin for one thousand two hundred and ninety-one dollars and nine cents, with interest at eight per cent, and costs of suit taxed at sixty-nine dollars and twenty-six cents, and decreeing a foreclosure of the mortgage and sale of the land, and ordering special execution therefor. This decree was filed, with the papers in the cause, February 20, 1889, but was never recorded. On October 10 of the same year, the matter coming on for hearing against Richard Goodwin, a supplemental decree was entered and recorded in which a judgment was rendered against him for one thousand, five hundred and sixty-one dollars and twenty-seven cents, with interest at eight per cent, and costs of suit, including attorney's fees, taxed a ninety-two dollars and ninty-five cents, and foreclosing the mortgage, and ordering special execution to issue. This cause was known as "Equity No. 579," and will be so referred to here. Thereafter, on November 16, 1889, the land was sold under special execution issued on both said decrees for the sum of one thousand six hundred and ninety-seven dollars and thirteen cents; and plaintiff Day, as assignee of the certificate of sale, received on November 19, 1890, a sheriff's deed. Plaintiff has owned and occupied the premises since that time, and has made valuable improvements thereon. It appears, too, that plaintiff took the assignment of the certificate of sale at the request of Richard Goodwin, and that, upon the latter's representation that no redemption would be made, plaintiff paid him the sum of four hundred dollars. These facts are shown by plaintiff in the case of Day against Goodwin, and it is asked that his title be quieted. The defendant appears by Richard Goodwin, as her guardian, and admits the execution of the mortgage and note. But it is alleged that said Ann Goodwin was of unsound mind at the time of the service of the original notice in No. 579, and has been so judicially declared. This notice, it

may be here said, was served by reading and giving a copy thereof to Ann Goodwin, as provided in section 2603 of the Code of 1873. A cross bill is also filed in which is set up the insanity of defendant, the ownership of the land, and a denial of the fact that any judgment was rendered in the foreclosure proceedings. It is also claimed that Day is liable for the rental value of said premises in the amount of one thousand eight hundred dollars; and the prayer is that she have judgment against him, and that her title be quieted. The lower court allowed the plaintiff the amount due on his mortgage, charged him for rents, and gave judgment for the remainder, one thousand, five hundred and forty-two dollars and forty three cents, to plaintiff, and established it as a lien on the land. It set aside the sheriff's deed to plaintiff, and decreed title to the premises to be in defendant, and the real estate was then ordered sold to pay plaintiff's lien. On motion, it was ordered that all costs, including filing fee and service of original notice, except costs of witnesses who testified to improvements, be taxed to plaintiff. From this decree and order plaintiff appeals. To avoid confusion, we will consider these issues first, and state the facts in the case of Stevens against Goodwin later on.

Plaintiff, claiming title through the proceedings in the Stevens foreclosure, seeks to quiet the same as against Ann Goodwin, who was a defendant therein. It is claimed in her behalf that the sale and deed in that case were void, for that no judgment was ever rendered in said cause. This must be the ground upon which the defendant can succeed, if at all, for the claim that the original notice was not properly served, and which will be spoken of more fully later, cannot be considered except upon application to set aside the judgment if one was rendered; and neither the answer nor cross bill suggests that any such relief is desired. The theory of the defense is that equity

cause No. 579 is still open and pending, and that Ann
Goodwin has a right to make defense therein. We may
assume that the entry apparently copied from the
judge's docket is, so far as it pretends to be a judgment,
absolutely void, and that the decree signed by Judge
Conner, but never recorded, has in such condition no
force or effect; but there is still another entry to be dis-
posed of, and this is the supplemental decree of October
10, 1889, which was duly recorded and approved.

4.      This language is found in this entry: "And the
court finds, after an inspection of the record,
that due and legal service of notice of the pendency of
this cause has been made upon said defendants, and
that said defendants having failed to appear, and
though solemnly called, came not, but made default, it
is therefore ordered by the court that said defendants
be adjudged in default." The court further finds that
"plaintiff is entitled to a foreclosure of said mortgage
as prayed in the petition." A judgment is then given
against Richard Goodwin, the land ordered sold, and
his equity of redemption decreed to be barred. This
entry is entitled against Ann Goodwin, Richard Good-
win, Dautremont, and Horton. The parties were all
adjudged to be in court. The plaintiff was asking as
against all defendants a judgment of foreclosure. Read-
ing the decree in the light of the record, and it in terms
appears that all defendants were held to be in default,
and the land ordered sold, though personal judgment is
given only against Richard Goodwin, and his right of
redemption alone is cut off. It is, as against Ann Good-
win, certainly informal. It might not withstand a
direct attack. It may be that it was not intended to
mean all that it says, but we think it must be held good,
to some extent at least, as against all defendants in a
proceeding that expressly ignores or denies its exist-
ence.

There are two methods, either of which defendant could have adopted to secure relief as against this judgment if it is voidable for any of the reasons she sets up. She could have instituted proceedings at law under sections 3154, 3157, and 3158, Code 1873, by asking to have the judgment vacated, or she might have proceeded in equity. See *Jackson v. Gould,* 96 Iowa, 488; *Larson v. Williams,* 100 Iowa, 114, and cases cited. But in either such event the parties to the judgment should be made parties to the proceeding to annul it. In the case at bar the proper parties were not in court to authorize relief against the judgment, even if such relief was asked. But it is claimed by defendant, in effect, that there was no notice of the pendency of the foreclosure proceedings served upon her, and that, because of this fact, the judgment therein is absolutely void as to her, and may be ignored. The notice was in fact served by reading and giving to her a true copy, as provided by section 2603 of the Code of 1873, as already said; and, although Mrs. Goodwin had been previously adjudged insane, she was not, when the foreclosure suit was begun, confined in an asylum, but was living with her husband; nor had she a guardian at this time. The notice was served both upon Ann and Richard Goodwin, who were parties defendant. The statute (section 2615, Code 1873) requires that in such cases the service on the insane person "may be made upon him and upon his guardian, and if he have no guardian then upon his wife or the person having the care of him or with whom he lives," etc. A strict compliance with this provision would have required the notice to Ann Goodwin to be served, not only on her, but also on her husband, although, as a matter of fact, he was present at the time, and was served with a similar notice as a joint defendant. Though the notice be irregular and insufficient, yet, if the court takes jurisdiction, the judgment is not void.

*De Tar v. Boone County,* 34 Iowa, 488; *Woodbury v. Maguire,* 42 Iowa, 339; *Moomey v. Mass,* 22 Iowa, 380. There are many other cases to like effect, but we need not cite them. The service appears upon the face of the record to be good. The defendant relies upon extrinsic facts to defeat it. We think it manifest on principle that in such case the showing can be made only in a direct attack on the judgment. It may be said in defendant's behalf that the action on her part below, in the case of *Stevens v. Goodwin,* being "Equity No. 579," was in the nature of a direct attack. This naturally leads to a consideration of what was done in that case.

After the action of *Day v. Goodwin* was brought, and after the discovery that the entry signed by Judge Conner had not been recorded, defendant, on October 7, 1895, filed an answer of general denial in "No. 579." Day moved to strike this answer from the files. There was no ruling on this motion. On October 8, 1895, Day made a motion to be substituted as plaintiff in No. 579, and for an order *nunc pro tunc* requiring the clerk to record the Conner decree. October 12, 1895, Defendant Ann Goodwin, through her guardian, filed a motion for leave to answer in said cause, and attached to the motion an answer containing substantially the same facts we have been considering in *Day v. Goodwin.* No ruling was made on this motion. Thereafter, on October 13, 1896, the trial court entered an order allowing Day to be substituted as plaintiff, but holding that "he had no right to have a *nunc pro tunc* order made directing the clerk to record in the records of the court the certain alleged judgment and decree as of the twentieth of February, 1889." From this order the appeal we are considering was taken by Day. No complaint of the lower court's action or non-action is made by Goodwin. Conceding that Ann Goodwin's proceedings in this matter were in the nature of a direct

attack, yet her right has not been passed upon by the lower court. Not having appealed, she can claim no affirmative relief here at this time. Her motion for leave to answer still stands undisposed of in the lower court. We have, then, to consider only whether plaintiff was entitled to the *nunc pro tunc* order asked.

It is not claimed that any rights of third parties have intervened or will be affected by such order. The action of the lower court in substituting Day as plaintiff in that cause is not questioned. The right claimed to a *nunc pro tunc* order is only a right to have the records show what the court in fact did in the case. The decree was prepared and signed by the judge, and given to the clerk, who filed, but failed to record it. In passing upon the right to this order, it is immaterial whether the proceedings in the case were regular or irregular, valid or invalid. The sole matter to consider is, shall the failure of a mere ministerial officer to perform his duty have the clerk to falsify the action of the court? We think the authorities sustain the right of Day to have the order prayed for. *Fuller v. Stebbins,* 49 Iowa, 376; *Tracy v. Beeson,* 47 Iowa, 155; *Buckwalter v. Craig,* 24 Iowa, 215; *Shelley v. Smith,* 50 Iowa, 543. It is true that the order made by the court in Equity No. 579 was not entered until after the decree was rendered in Day against Goodwin, but this should not prejudice plaintiff, for his application for the relief was on file long before the disposition of the case last mentioned.

What we have said makes our conclusions apparent. Plaintiff should have had a decree on his bill to quiet title, the costs should have been taxed to defendant, and plaintiff was entitled to the order prayed for in No. 579. The action of the lower court in both cases will be REVERSED.