SYLVESTER URBANY, Appellant, v. CITY OF CARROLL et al., Appellees.

MUNICIPAL CORPORATIONS: Public Improvements—Non-Re-
1  sponsive Bids—Effect. Bids for the construction of public improvements, *non-responsive* to the required plans and specifications, have no standing, even though they be lower than other bids which are responsive. So held where the plans, etc., required the work to be completed by November 1st and the bidder changed the date to December 1st.

MUNICIPAL CORPORATIONS: Public Improvements—Bids—Re-
2  jection of Surplusage. The rule that, when a bid for the construction of a public improvement is both responsive and non-responsive to the required plans, etc., the bid may be accepted as to the responsive part and wholly rejected as to the non-responsive part, cannot, manifestly, be applied when the bid wholly changes a material part of the plans, etc. So held where the bidder changed the date of the completion of the work.

CONTRACTS: Construction—Conflicting Written and Printed Pro-
3  visions—Statutory Rule. *Written* provisions control *printed* provisions if the two are inconsistent. Sec. 4616, Code, 1897.

PRINCIPLE APPLIED: The specifications for a paving improvement specifically required the work to be completed by November 1, 1916. The form of contract furnished by the city required the completion of the work according to plans and specifications. The printed form of bid furnished and required by the city was a bid to do the work ''upon the terms and conditions of the specifications and form of contract therefor,'' and contained a clause that, if awarded the contract, he (the bidder) would ''have the improvement completed on or before ———————, 1916.'' The bidder in question used the printed form of bid, but in the blank he *wrote* ''December 1st.'' *Held*, the *written* date in the

bid, "December 1st," controlled the *printed* date in the specifications, "November 1st," thus rendering the bid non-responsive to the plans and specifications.

**CONTRACTS:** Construction—**Conflicting Written and Printed Provisions—Scope of Statutory Rule.** The statutory rule that written provisions control printed provisions if the two are inconsistent cannot be limited to parties other than municipalities. (Section 4616, Code, 1897.)

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

TUESDAY, MAY 9, 1916.

THE proceedings up to the bidding for the pavement of certain streets in the city of Carroll were regular. A form of contract, together with the plans and specifications, was on file with the city clerk, and bidders were required to use a form provided in bidding. The contract exacted the construction of the improvement according to the plans and specifications, and the latter, among other things, provided:

"The successful bidder must sign the contract for the work to be done by him and furnish the bond required therefor within 10 days after the contract has been awarded to him, and he has been notified thereof, and must begin work on or before May 1, 1916. He shall proceed with the work, prosecuting it with due diligence from day to day at such time in such places as the engineer may from time to time direct during the progress of the work. He shall have the improvement entirely completed on or before November 1, 1916. The time limit shall be considered as extending between May 1, 1916, and November 1, 1916. If the contractor fails to complete the work at the time specified, he shall forfeit to the city the sum of $25 per day for each and every day which the completion of the work is delayed beyond the time fixed by the contract. . . . Each bidder will be required to deposit with his bid a certified check for the sum of $3,000, made payable to the city treasurer of Carroll, Iowa, as a guarantee that

he will enter into contract with the city for doing the work, in strict accordance with the plans and specifications and in accordance with his bid, and that he will furnish the bond required. Said checks shall be forfeited to the city of Carroll, Iowa, as agreed and liquidated damages if he fails to enter into such contract and furnish the required bond within 10 days after the contract has been awarded to him and he has been notified thereof."

The form of the bid furnished read:

"To the Mayor and City Council, of the City of Carroll, Iowa:

"The undersigned hereby certify that they have personally examined all of the plans, specifications, stipulations, form for contract and form for bond, and having made such examination, the undersigned proposes to pave the roadway with a 2-inch asphaltic concrete wearing surface on a 5-inch concrete base on each of the streets in Carroll, Iowa, named therein, by furnishing all of the labor, material, tools, machinery and appliances necessary to complete the work in a proper and workmanlike manner, and in accordance with plans, and upon the terms and conditions of the specifications, printed advertisement and form for contract therefor to the satisfaction of the city council and city engineer of said city, and complying with the laws of the state of Iowa, the rules, regulations and ordinances of the city of Carroll, Iowa, at the following prices, to wit: [Here names of different things are recited, with spaces for prices in detail and totals.]

"In case our bid is accepted, we agree to sign the contract and furnish the required bond within 10 days after the contract has been awarded to us and have the improvement entirely completed on or before......................, 1916.

"The names and addresses of all the persons interested in the bid are: . . . . This bid is made without connection with any other person making any bid for the work, and said bid is in all respects fair, without collusion or fraud, and no member of the city council or other officer of the city is

directly or indirectly interested in this bid or any portion of the profits therein."

J. S. McLaughlin & Sons made a sealed bid in form as required, filling in the blank for date "Nov. 1st," total sum being $141,982.10. Western Improvement Company submitted a sealed bid in due form as required, totaling $140,263.40, but writing in the blank for date "Dec. 1st." The city council, upon opening the bids, rejected that of the Western Improvement Company and accepted that of J. S. McLaughlin & Sons. The representative of the Western Improvement Company was present, and, though authorized to act in the premises, made no claim that there was a mistake in the bid or that it was otherwise than intended. The plaintiff, as resident and taxpayer of the ·city of Carroll, contended that the bid of the Western Improvement Company should have been accepted, and prayed that defendants be enjoined from carrying out the contract entered into by the city with J. S. McLaughlin & Sons. The petition was dismissed, and plaintiff appeals.— *Affirmed.*

*Stipp, Perry, Bannister & Starzinger,* for appellant.

*Ralph Maclean* and *L. H. Salinger,* for appellees.

LADD, J.—The preliminary proceedings for the pavement of certain streets in the city of Carroll had been regular, form of contract and plans and specifications prepared, and an advertisement for bids duly published.

1. MUNICIPAL CORPORATIONS: public improvements: non-responsive bids: effect.

Printed forms were furnished those desiring to bid. In its bid, the Western Improvement Company proposed to perform "in accordance with the plans and upon the terms and conditions of the specifications, printed advertisement and form of contract therefor." After stating in detail prices for so doing, it proceeded:

"In case our bid is accepted, we agree to sign the contract and furnish the required bond within 10 days after the con-

tract has been awarded to us and have the improvement completed on or before Dec. 1st, 1916.''

In the other bid, that of J. S. McLaughlin & Sons, which was accepted, notwithstanding the fact that it was $1,718.70 higher than that of the Western Improvement Company, the date inserted for completion was Nov. 1, 1916. The date ''Dec. 1st,'' in the bid of the Western Improvement Company, was written in. The form of contract exacted performance according to the specifications, and these provided that the contractor should have the improvement entirely completed on or before November 1, 1916, and that ''the time limit shall be considered as extending between May 1, 1916, and November 1, 1916.'' The specifications further provided that a certified check of $3,000 be deposited with each bid as a guarantee that he will enter into a contract with the city for doing the work in strict accordance with the plans and specifications and in accordance with his bid and that ''said check shall be forfeited . . . if he fails to enter into such contract.'' Another condition says that, on failure to complete the work in the time specified, the contractor shall forfeit $25 per day ''for each and every day that elapses between the time specified for completion and the time it is actually completed,'' and the amount thereof shall be deducted from any money owed to the contractor. It seems clear that the bid of the Western Improvement Company was not responsive to the proposition presented by the plans and specifications. These fixed November 1st for the completion, while the company proposed, if it were awarded the contract, to have the improvement done December 1st. The time of completion of the improvement was a material part of the specifications, and a bidder had no more right to change it than to change the materials to be used or the manner of preparing them. *Osburn v. City of Lyons,* 104 Iowa 160. If a change of one month may be made, why not a year?

Of course, the contract must be let to the lowest responsible bidder, and mere irregularities in the form of the bid

will not justify its rejection, for these may be corrected in
entering into the contract, after the bids are
opened.  *Faist v. Mayor, etc., of City of
*Hoboken* (N. J.), 60 Atl. 1120; 1 Abbott's
Mun. Corp., Section 263.  Thus, in *Miller v.
City of Oelwein,* 155 Iowa 706, bids for three
kinds of pavement were called for, and that of the lowest bid-
der in kind adopted was to lay "bitulithic or its equal pave-
ment, using bitulithic or its equal," and the court there said:

*2. MUNICIPAL COR-
PORATIONS:
public improve-
ments: bids:
rejection of
surplusage.*

"Ford knew that the council had no authority to adver-
tise for 'bitulithic or its equal pavement,' and that it had not
purported to do so, and, when he proposed to lay bitulithic
or its equal pavement at a specified price, he authorized the
council to accept his proposal for bitulithic pavement without
condition.  His bid was framed in his own terms, and he
was bound to assume that the council might give it a construc-
tion which would render it valid and binding rather than a
construction which would vitiate it and render it a farce.  We
think that there was no such doubt or uncertainty as to the
effect of Ford's bid as to justify the council in refusing to con-
sider it."

No contradiction was involved.  Part of the bid was re-
sponsive to the proposal and part was not; and as these were
severable, the court held that the portion not responsive
should be treated as surplusage.  There was nothing to recon-
cile them, while here the dates of completion are different, and
the sole question is, Which shall prevail in the construction of
the bid?  The authorities agree that there must be a substan-
tial compliance with the proposal to warrant the consideration
of the bid, else bidding would not be on equal terms, and the
advantages of competition lost.  Unless the bid responds to
the proposal in all material respects, it is not a bid at all, but
a new proposition.  It will be noted that, though the specifica-
tions fix the time for completion as November 1, 1916, the
payment of $25 per day as damages is to be for each day

that completion of the work is delayed beyond the time fixed by the contract, and that the deposit of a check accompanying the bid is as a guarantee that the bidder will "enter into contract with the city for doing the work in strict accordance with the plans and specifications and in accordance with the bid."

The printed portion of the bid of the Western Improvement Company was that it lay the pavement "upon the terms and conditions of the specifications . . . and form of contract therefor" at prices stated, and, in event of acceptance, it would have the improvement entirely completed on or before December 1, 1916. Ordinarily, where the specification is in general terms, a subsequent reference thereto in more specific language operates to qualify the words first employed. Also, the words "Dec. 1st." were inserted in writing, and "when an instrument consists partly of written and partly of printed form, the former controls the latter, if the two are inconsistent." Section 4616, Code; *Sylvester v. Ammons,* 126 Iowa 140. This statutory rule doubtless is based on the theory, established by experience, that the writing necessarily has been deliberately inserted, and therefore is more likely to have represented the intention of the party or parties than inconsistent language printed. The reason of the rule precludes its limitation to parties other than municipalities, and, as it is statutory, it will not give way to the rule of construction suggested by appellant that the first of two contradictory provisions ordinarily will prevail. The bid then must be construed as offering to complete the improvement by December 1, 1916, instead of November 1st of the same year. It was to be read as though the company had stated that it would not undertake to lay the pavement by the time proposed, but would do so in another month, or on or before December 1st; and this was confirmed

3. CONTRACTS: construction: conflicting written and printed provisions: statutory rule.

4. CONTRACTS: construction: conflicting written and printed provisions: scope of statutory rule.

by the attitude of its representative, who was present when the bids were opened and made no suggestion of a mistake's having been made in the date. The bid was not in response to the city's proposal, but on terms of the company's own choosing, and was rightly rejected. The city might have rejected all bids, but that matter was for the council to decide, and, having determined to let the contract, it was authorized to so do with the lowest bidder who had offered to complete as proposed by the city.

The decree of the district court is—*Affirmed.*

.EVANS, C. J., GAYNOR and SALINGER, JJ., concur.