HY BRUTSCHE et al., Appellants, v. INCORPORATED TOWN OF COON RAPIDS et al., Appellees.

No. 43158.

JANUARY 14, 1936.

ORIGINAL OPINION MODIFIED AND REHEARING DENIED MARCH 14, 1936.

Salinger, Reynolds & Meyers, Graham & Graham, and Harry Wifvat, for appellants.

William L. Hassett, for appellee Fairbanks-Morse Const. Co.

Helmer & Minnich, and George A. Rice, for other appellees.

ALBERT, J.—This case is somewhat related to the case of Brutsche v. Incorporated Town of Coon Rapids, reported in 218 Iowa 1073, 256 N. W. 914. The fact situation is partially related in that case, and need not be elaborated here.

Briefly stated, in February, 1934, the town held an election to determine whether or not a municipal electric light and power plant should be established and constructed by the municipality. The proposition was carried, and in pursuance of the power there conferred and in accordance with the statute, a resolution was passed by the council to adopt the plans and specifications and the form of contract then on file with the clerk of the town council. The power conferred by the election on the town of Coon Rapids, according to the question submitted to the voters, was derived from the following form of ballot:

"Shall the town of Coon Rapids, Carroll County, Iowa, establish, erect and construct a municipal electric light and power plant at a cost of not to exceed the sum of $114,000.00, to be paid out of the future earnings of said plant?"

Advertisement was duly made calling for bids on the proposed improvement. Several bids were submitted, among others that of the defendant Fairbanks-Morse Construction Company, and after said bids had been received and considered, an alleged contract was entered into between the town and the Fairbanks-Morse Company; whereupon this action was instituted by the plaintiffs, alleging, among other things, that said contract

was invalid because, under it, negotiable bonds or pledge warrants were issued in the sum of $98,690, with 6 per cent interest payable semiannually, running over a series of years, and that the said company retains the title and ownership of all of said property until the said sum of $98,690, together with all the interest, shall have been paid in full, and therefore the contract is invalid as being in excess of the authority granted to said town by the electors. It is further alleged that said contract does not comply with the plans and specifications as adopted by said town, in that (a) the specifications and notice to bidders were for a three-unit plant, while the contract proposed was to supply a two-unit plant; (b) under the specifications and notice to bidders, the engines supplied were to be guaranteed with respect to fuel oil consumption and also as to lubricating oil consumption, and said contract does not contain any such guarantee; (c) according to the specifications and notice to bidders (treating the specifications on file as a part of the notice to bidders), specific provision was made as to the time of the commencement and completion of said proposed plant, subject only to delays beyond the control of the contractor, while the alleged contract specifically provided: ''In the event any suit, action, or other legal proceedings in which the legality or validity of this contract or of the proceedings preliminary to and authorizing the same shall in any manner be brought in question, shall be filed or pending, the time for commencement or completion of delivery and installation of said machinery and equipment shall be extended during the period while said suit, action or other proceedings shall be pending and until the same shall be finally adjudicated * * *;'' (d) the specifications and notice to bidders provided for a trial run and test of not less than eight hours to be run in the presence of the town council or engineer, or both, under such loading conditions and at such hours as the town engineer might direct, and that such test was to be made a basis for the approval of the installation by the town engineer and the acceptance of the installation by the council, whereas the alleged contract provided that the test should be conducted by the engineer of the defendant company, who should have entire charge thereof, and guarantees of duty were specifically limited to the operation of said machinery at a test conducted by the engineer of the defendant company. The town must request such test within ten days after the machinery was put in opera-

tion on penalty of having the guarantees made null and void and the machinery considered as accepted by the municipality. The specifications that were adopted as part of the contract were not specifications furnished by the town, on which all bidders were expected to base their bids, but were specifications furnished by the defendant company, and differed in many respects from those furnished by the town and on which bids were to be based. Hence, free competition was not had, as the call for bids was on the plans and specifications filed with the town clerk, and not on those furnished by the Fairbanks-Morse Construction Company.

It is because of these matters that the plaintiffs insist that the contract under assault here is invalid.

■■■ 1. Numerous questions are raised as to whether or not the contract is responsive to the call. Among other provisions is one that the bid and contract must fully respond in all material respects to the call or invitation. This has been the previous pronouncement of this court in the Carroll case (Urbany v. City of Carroll), 176 Iowa 217, 157 N. W. 852, and the Grand Junction case (Iowa Electric Light & Power Co. v. Incorporated Town of Grand Junction), 216 Iowa 1301, 250 N. W. 136, where it is said that unless the bid responds to the proposal in all material respects it is not a bid at all, but a new proposal. We think this fully settles the law of this state on this general proposition.

Under the call for bids in this case, the work was to be commenced within 30 days after the making of the contract, and completed within 180 days from the execution of the contract, subject only to unavoidable delay. The bid, and contract made in pursuance thereof, contained the following provision: "In the event any suit, action, or other legal proceedings in which the legality or validity of this contract or of the proceedings preliminary to and authorizing the same shall in any manner be brought in question, shall be filed or pending, the time for commencement or completion of delivery and installation of said machinery and equipment shall be extended during the period while said suit, action or other proceedings shall be pending and until the same shall be finally adjudicated, and the company shall not be required to begin or resume delivery, erection and installation until such final adjudication, nor shall the company be liable for any damage due to the delay caused by cessa-

tion of work while such litigation is pending or until such final adjudication.''

We think this is not responsive to the call. It extends to the defendant company rights and privileges which are not within the purview of the call.

Defendants cite the case of Interstate Power Co. v. Fairbanks-Morse & Co., a Minnesota case reported in 259 N. W. at page 691, and contend that same is controlling here. We do not see the application of the doctrine laid down in that case to the case at bar. The case is in no way parallel to the situation we have in the present case.

2. Another point raised in relation to this matter is that, under the call and specifications, when the plant was completed a test was to be made of a trial run of not less than eight hours, in the presence of the town council or engineer, or both, ''under such loading conditions and at such hours as the engineer may direct.'' In other words, the trial run and test were to be under the control and direction of the town engineer, who was to approve the same on behalf of the town; whereas, under the bid and contract made by the defendant company, the test was to be conducted by the engineer of the defendant company, ''who shall have entire charge thereof.'' In other words, under the specifications of the town, the trial run and test were to be conducted by the engineer of the town, who was to have control and direction thereof; under the contract, the trial run and test were to be under the control and direction of the engineer of the defendant company. We think this is a variance between the town's specifications and the bid and contract of the defendant company.

It seems passing strange that when a town advertises for bids on certain plans and detailed specifications then on file with the town clerk, bidders do not respond to the call, but disregard the plans and specifications on file and furnish plans and specifications of their own on which they base their bids. The underlying thought, as we have many times explained, in this whole proceedings, is that there may be competitive bidding on definite plans and specifications then on file; and it is the duty of bidders, when such conditions exist, to base their bids on the plans and specifications on file, and if this is not done and each party is permitted to furnish his own plans and specifications, there can be no competitive bidding. If, on the other hand, the call

1300

were for bids on the plant as a whole, without reference to plans and specifications, it might be that, under such conditions, each bidder would be entitled to furnish his own plans and specifications. But see Northwestern Light & Power Co. v. Town of Grundy Center, 220 Iowa 108, 261 N. W. 604. But we do not have this condition existing in this case.

Other questions are raised, and discussed very ably, by both sides of this case; but without giving further attention to the same, we think that the matters therein spoken of are sufficient to warrant the holding that the contract signed varies in these material matters from the specifications and call for bids to such an extent that the contract must be held to be void.

The defendants have pleaded that these matters were all litigated, or could have been litigated, in the former case between these same parties. The district court held that the sufficiency of the plans and specifications was involved in the previous litigation, and was litigated therein, and that the plaintiffs now in this case cannot complain about the sufficiency of such plans and specifications. With this we are disposed to agree. We are also disposed to hold with the district court that the question of the validity of the contract in controversy herein, as to alleged variance and nonconformity of the bid with such plans and specifications, was not involved in the previous litigation, and plaintiffs are entitled to have such question considered by the court.

■■■ Defendants further urge that plaintiffs are not the proper parties to be entitled to the relief prayed for in this court. The district court decreed that: ''The plaintiffs are the real parties in interest and have the right to prosecute the suit, and have instituted and prosecuted it in good faith, and that the defendants take nothing upon their contention denying plaintiffs said status and good faith.''

As heretofore indicated, the plaintiffs took a limited appeal, in which they limited the appeal to the questions heretofore referred to. While the case is an equity case, and the general rule is that an appeal brings the case up for trial *de novo,* yet we have recognized the rule that an appeal may be taken from part of the judgment, and when so taken, it does not bring the whole case up for review or trial *de novo.* The defendants have not cross-appealed in this case, and the lower court decreed that the plaintiffs were properly qualified as plaintiffs to maintain this

action. This being true, it must necessarily follow that, if the defendants wish to question the ruling of the court in the matters here involved in which the court ruled adversely to the defendants, the defendants should have cross-appealed in order to get any advantage that might come to them by reason of the erroneous adverse rulings about which complaint is here made. In short, the lower court having ruled that the plaintiffs were properly qualified to maintain this action, and the defendants not having cross-appealed to cover this adverse ruling, they cannot now be heard to claim any advantage therefrom. It seems to be the settled rule in this state that one party cannot avail himself of an appeal prosecuted by the other party to ask a review of that portion of the judgment adverse to himself. Stafford v. Maus, 38 Iowa 133; West v. West, 90 Iowa 41, 57 N. W. 639; Day v. Goodwin, 104 Iowa 374, 73 N. W. 864, 65 Am. St. Rep. 465. And, further, Code, section 12836, provides:

"An appeal from part of an order, or from one of the judgments of a final adjudication, or from part of a judgment, shall not disturb, delay, or affect the rights of any party to any judgment or order, or part of a judgment or order, not appealed from."

See Andrew v. Concannon, 76 Iowa 251, 41 N. W. 8; Boone v. Boone, 160 Iowa 284, 137 N. W. 1059, 141 N. W. 938; Lytle Inv. Co. v. McMorris, 189 Iowa 1355, 179 N. W. 871.

This rule also applies to equity cases. Gleiser v. McGregor, 85 Iowa 489, 52 N. W. 366.

Having reached this conclusion, we find that the court erred in its ruling, and the case is reversed.—Reversed.

DONEGAN, C. J., and PARSONS, KINTZINGER, ANDERSON, and RICHARDS, JJ., concur.