FRED GREAVES, Appellant, v. CITY OF VILLISCA et al., Appellees.

No. 43394.

MAY 5, 1936.

Hysham & Billings and Cook & Cook, for appellant.

W. L. Hassett and Harold Bickford, for appellees.

KINTZINGER, J.—The city of Villisca, after complying with the preliminary statutory requirements leading up to the letting of a contract for a municipal light and power plant in the city of Villisca, entered into a contract with the Fairbanks-Morse Construction Company for the construction of such a plant during the month of September, 1935.

Appellant contends that the contract entered into did not comply with the terms of the specifications, and therefore resulted in a failure of competitive bidding. If the contract entered into did not call for the construction of the plant in substantial compliance with the town specifications, there was no competitive bidding. Iowa Electric Light & Power Co. v. Incorporated Town of Grand Junction, 216 Iowa 1301, 250 N. W. 136.

The lower court found that the contract complied with the plans and specifications, and dismissed plaintiff's bill. Plaintiff appeals.

The specifications provided, among other things, that:

"The contractor shall furnish and install two heavy duty Diesel engines each of approximately 375 Brake Horsepower capacity, * * * connected to one 250 K. W. a. c. generator and direct connected exciter. * * * The bidder shall bid on his standard size equal to or exceeding that specified. * * *

"*The engine should be capable of developing the required Brake Horsepower continuously* * * *.

"The engine shall be of such design and construction as will insure ease and reliability of operation, * * * and continuous operation without frequent shutdowns for adjustment."

The specifications also provided that:

"The engine covered by these specifications are to be used in central station service, *and no bids will be considered on any types or makes of engines unless they have been in similar service a sufficient length of time to prove the design correct and capable of giving satisfactory service in central station operation.*"

Under the contract, the Fairbanks-Morse Company agreed to furnish two model No. 32-E Diesel engines having 375 horsepower capacity each in accordance with the city specifications. The various models of the Diesel engines were known as No. 32 with a letter of the alphabet after it. The earliest model was known as No. 32-A, brought out in 1923. This had a 50 horsepower per cylinder. Later changes were made increasing the horsepower capacity to 60 or 70, as new models were put out. Model 32-D was brought out in September, 1930, and given a rating of 70 horsepower per cylinder, or 350 horsepower per engine; there being five cylinders in each engine. The latest model was known as No. 32-E, which was brought out in 1935. When first brought out, this model was given a rating of 70 horsepower per cylinder, or 350 horsepower per engine.

The capacity rating of this engine was changed by the Fairbanks-Morse Company in July or August, 1935, but prior to that time it had been sold and installed as a 350 horsepower engine. The record shows that the horsepower of each new model was given a higher rating than the previous model. The record, however, shows that after a new model came out, "the rating on the old model was retained *until the new model had been proved in the field.*"

Appellee contends that because the new Model 32-E had been given a rating of 375 horsepower per engine after it had been in use as a 350 horsepower engine for a few months, it fully met the requirements of the specifications requiring a 375 horsepower engine.

Appellant contends, however, that the record fails to show that model 32-E had been in use in central service stations for a sufficient length of time to prove the engine capable of operating continuously as a 375 horsepower engine.

It is the general rule of law that where there is a substantial difference between the material contracted for and that described in the plans and specifications, there is no competitive bidding. Fauble v. Davis, 48 Iowa 462; Connor v. Trapp, 127 Iowa 742, 104 N. W. 333; Pascoe v. Barlum, 247 Mich. 343, 225 N. W. 506, 65 A. L. R. 833, and an exhaustive note on the subject on page 835.

It is now the well-settled law in this state that where the contract let does not substantially comply with the plans and specifications, there is no competitive bidding and the contract

is invalid. Urbany v. City of Carroll, 176 Iowa 217, 157 N. W. 852; Iowa Electric Light & Power Co. v. Grand Junction, 216 Iowa 1301, 250 N. W. 136; Iowa-Nebraska Light & Power Co. v. Villisca, 220 Iowa 238, 261 N. W. 423; Brutsche v. Coon Rapids, 220 Iowa 1295, 264 N. W. 696.

In Urbany v. Carroll, 176 Iowa 217, loc. cit. 222, 157 N. W. 852, 854, we said:

"The authorities agree that there must be a substantial compliance with the proposal to warrant the consideration of the bid, else bidding would not be on equal terms, and the advantages of competition lost. *Unless the bid responds to the proposal in all material respects, it is not a bid at all, but a new proposition.*"

In Brutsche v. Town of Coon Rapids, 220 Iowa 1295, loc. cit. 1299, 264 N. W. 696, 698, 699, we said, speaking through Justice Albert:

"It seems passing strange that when a town advertises for bids on certain plans and detailed specifications then on file with the town clerk, bidders do not respond to the call, but disregard the plans and specifications on file and furnish plans and specifications of their own on which they base their bids."

In order to determine whether or not the contract let in this case met with the plans and specifications in the respects hereinabove set out, a review of the evidence will be necessary.

I. Appellant claims that although the appellee in his proposals may have bid upon two 375 horsepower engines, it is undisputed in the record that the engines bid upon consisted of two No. 32-E engines, and that these engines were rated in the Fairbanks-Morse catalogue as 350 horsepower engines. It is also shown by the record that at or about the very time the Villisca letting was being made, the Fairbanks-Morse Company, appellee herein, was installing the identical engine No. 32-E in the towns of Madison, Nebraska, Deshler, Nebraska, and Rockford, Iowa, at a rating of 350 horsepower per engine, or 70 horsepower per cylinder. It is also shown by the record that up until the time of the letting of the Villisca contract, the No. 32-E Diesel engine was listed in its own catalogues as a 350 horsepower engine.

While these facts are conceded in the record, appellee con-

tends that a new horsepower rating had been given the No. 32-E Diesel engine by the manufacturers under which it now contends that the same engine is a 375 horsepower engine. Without reviewing all the evidence in detail, it is sufficient to say that the evidence casts some doubt upon the capacity of the engine referred to in appellee's bid as being a 375 horsepower engine.

Appellee contends, however, that the engine had been tested at appellee's factory, and, with improvements made therein after the publication of its first catalogues describing the No. 32-E model, it now has a capacity of 375 horsepower per engine, or 75 horsepower per cylinder. Appellee also contends that its bid, and its contract, was to furnish and install two 375 horsepower engines "capable of developing the required 375 horsepower continuously as provided by the contract," so that if the engines installed would, upon a test being made before its acceptance, fail to develop a 375 horsepower, the appellant could not be held liable on its contract. The Fairbanks-Morse Company also contends that it has furnished the city a $131,000 bond to insure the proper installation of the plant, including two engines of 375 horsepower each, and the court is, therefore, not justified in enjoining the installation of the plant.

In our opinion it is unnecessary to decide the case upon this point, because appellant contends that the record in this case shows without dispute that another provision in the plans and specifications was not met.

II. The specifications also provided that the engines covered by these specifications are to be used in central station service, and:

"*No bids will be considered on any types or makes of engines unless they have been in similar service a sufficient length of time to prove the design correct and capable of giving satisfactory service in central station operation.*

"The engine should be capable of developing the required Brake Horsepower * * * .

"The engine shall be of such design and construction as will insure ease and reliability of operation, * * * and continuous operation without frequent shut-downs for adjustment."

Appellant contends that the type of engines proposed to be installed by the contract entered into have not been "in central

station operation for a sufficient length of time to prove the design correct *and capable of giving satisfactory service in central station operation.''* The meaning of this provision of the specifications is clear and unambiguous. Under this provision, it was necessary for appellee to show that engine No. 32-E had been in central station operation for such a length of time that it was capable of developing a continuous 375 horsepower service without being overloaded or overcrowded.

The most that can be said from the evidence in the record is that Diesel engine No. 32-E had been installed in several towns as a 350 horsepower engine and not as a 375 horsepower engine. The evidence also shows without dispute that the engine in question had not been installed in any town as a 375 horsepower engine, and had not been installed in any central station operation for a sufficient length of time to prove it capable of developing a continuous 375 horsepower operation without overloading.

These provisions of the specifications must have been placed there for the purpose of enabling the city to check up on them by means of investigating the horsepower capacity of similar engines in other towns as to its ability to give satisfactory service as a 375 horsepower engine.

Many different models of a certain machine may be manufactured in a course of time, and it may be that each succeeding model may show a progressive improvement upon its predecessor. Nevertheless, if a prospective purchaser desires to know that a certain model has been tried out in certain service for a sufficient length of time to demonstrate and prove its capacity for the service required, we know of no provision of law preventing him from so doing, prior to its purchase. The city of Villisca was entitled to the benefit of such a provision in the specifications. So that if an investigation should reveal that the engine could not give satisfactory service in central station operation as a 375 horsepower engine, it could reject the bid and thus avoid the necessity of expensive litigation before the plant was installed.

It may be true that the engines contracted for could, after their operation in a central station, for a sufficient length of time, prove their capacity as 375 horsepower engines, as required by the specifications, nevertheless if a prospective purchaser makes it a condition precedent to his purchase that similar engines must first have been in operation at a central plant

for a sufficient length of time to prove its capacity as a 375 horsepower engine, then such purchaser is not required to buy unless it is first shown that the engine was in central station operation for the time required by the specifications. The fact that the company may be able to show that the engine has been satisfactorily tested in its own plant, as having the required horsepower, would not meet the requirements of the specifications, and a purchase of such an engine without a showing that it has been in the service required by the specifications would not be competitive bidding.

It is our conclusion, from the evidence offered upon this branch of the case, that the acceptance of a bid upon an engine which did not meet this requirement of the specifications would not amount to competitive bidding. For these reasons, we are constrained to hold that the contract entered into was invalid and that the injunction prayed for should have been granted.

The case is hereby reversed and remanded for a decree in harmony herewith.—Reversed and remanded.

DONEGAN, C. J., and MITCHELL, HAMILTON, ANDERSON, PARSONS, ALBERT, and STIGER, JJ., concur.