HELENA MILLER, Appellee, v. THE MINNEAPOLIS & ST. LOUIS
          RAILROAD COMPANY, Appellant.

[119    41]
[138    362]

Action to Quiet Title: FAILURE TO SERVE ORIGINAL NOTICE: DECREE:
     COLLATERAL ATTACK: EVIDENCE OF SERVICE.   Although a decree
     recites service of the original notice, if in fact there was no
     service, it may be attacked in a collateral proceeding, but the
     evidence of want of service must be clear and satisfactory.
     Evidence considered and held sufficient to warrant the court
     in finding there was no service.

*Appeal from Webster District Court.*—HON. S. M. WEAVER,
                    Judge.

          TUESDAY, JANUARY 20, 1903.

     SUIT in equity to quiet title to certain real estate occu-
pied by defendant for railway purposes.    The land was

originally condemned by the Ft. Dodge & Ft. Ridgly Railroad Company, and by it sold to defendant. Sometime before this suit was instituted, defendant procured a decree to be entered in the district court of Webster county, in an action against plaintiff and others, quieting title to the land in dispute. Plaintiff says that this decree is void because no notice of the action was ever served upon her. On these issues the case was tried to the court, resulting in a decree for plaintiff, and defendant appeals.—*Affirmed.*

*R. M. Wright* and *Albert E. Clark* for appellant.

*Healy & Healy* and *A. N. Botsford* for appellee.

DEEMER, J.—As defendant relies solely on its decree obtained in the Webster county district court, the decision must turn on the effect to be given that decree. This is not a direct, but a collateral attack, upon that decision; and defendant contends that as the decree recites that the court rendering it had examined the original notice, and found that plaintiff herein, Helena Miller, had been duly served personally with an original notice, it is not permissible for plaintiff to show that in fact no notice was served upon her. Appellant also contends that, even conceding such evidence was admissible, yet there was not sufficient to justify the court in ignoring the decree, and that the finding of the district court that there was no notice should be set aside, and the integrity of the decree preserved.

As to the first point, it is now well settled in this state that, even on a collateral attack, it is competent to show that there was in fact no service of an original notice on the party sought to be concluded by the decree. If there was no service, the decree is void, and it may be attacked at any time, and by any form of procedure which brings the legality of the decree in question. *Priestman v. Priestman,* 103 Iowa, 320; *Bradley v. Jamison,* 46 Iowa, 69; *McAllister*

*v. Johnson*, 108 Iowa, 42; *Hubner v. Reickhoff*, 103 Iowa, 368.   In all the cases relied upon by the appellant on this branch of the case, there was service on the party attacking the decree, and it was claimed that the service was defective.   Such decrees can only be assailed by direct proceedings.   See *Day v. Goodwin*, 104 Iowa, 374; *Lees v. Wetmore*, 58 Iowa, 170; *Rotch v. Humboldt College*, 89 Iowa, 480; *Bacon v. Chase*, 83 Iowa, 521.   But where the record recites service of notice, the decree, although not con.lusive, should ordinarily be upheld, unless opposed by clear and satisfactory proof.   *Wyland v. Frost*, 75 Iowa, 209; *Farnsley v. Stillwell*, 107 Iowa, 631; *Galvin v. Dailey*, 109 Iowa, 332; *Hoitt v. Skinner*, 99 Iowa, 360.   With these rules in mind, we now turn to the record.

Plaintiff's husband testified that he never heard of the railroad company's making any claim to the property until the year 1899 (the decree was rendered in January, 1898), when the county treasurer informed him that there had been a "change" in the property; that he did not know of the sheriff or any other officer having served a notice upon his wife with reference to the property; and that he never heard of any lawsuit until about the time this case was brought on for trial, in September of the year 1900.   Plaintiff testified as follows: "I am the wife of Phillip Miller, and know this property down here, near the Rock Island depot.   Mr. Miller, my husband, does the business for me. He deeded it to me four or five years ago.   Q. Did anybody at any time come and serve any papers on you about this property?   Do you know Charlie Hohn?   A. Yes. Q. Deputy sheriff?   Used to be sheriff?   A. Yes.   Q. Did he serve any papers on you?   A. Not a paper.   He was never in my house with any paper.   I have known Charlie for a long time.   I don't know the sheriff.   No one served any papers on me about any law in court.   I speak English very badly"   Defendant introduced the petition filed in its case against plaintiff and others, and the decree

rendered therein, to which plaintiff objected because of no notice to her thereof. It also put the sheriff of Webster county upon the stand, who testified as follows: "My name is W. O. Woolsey. I reside in Ft. Dodge, and am working for an agricultural house. I was formerly sheriff of Webster county, during the years 1894, 1895, 1896, and 1897. I remember of getting papers for service in the case of the Minneapolis & St. Louis Railroad Company versus a large number of parties defendant, including W. D. Washburn and a large number of others; I remember that after my first return was made I had not got service on all the defendants, and I remember you [Mr. Wright] handing an additional paper to serve on those that had not been served, afterwards. Q. Did you serve any such notice on Helena Miller, the defendant in this case? A. I can remember serving a good many papers, but, as to my remembering any one name, I could not tell. Q. What do you say to having made service on all of the resident defendants in Ft. Dodge? (Objected to as incompetent and immaterial, and calling for a conclusion.) A. I would say that I have. Q. Do you remember of me asking you if you had obtained service on Helena Miller, before I took the final decree? A. I remember of you asking me if I had got all of them here, and I told you that I had all that were residents. Q. That is, before I gave you these additional papers? (Objected to as immaterial and asking for a conclusion. Overruled. Exception.) A. Yes, sir." Cross-examination: "As a matter of fact, I served only a few of these people myself. Q. Examine the return here, and state if you served any of these people,—some twenty-five of them? A. I think I did. I think I remember of serving Fred Grant. Q. Is that your writing? A. Yes, sir; I remember of serving a number of those in town. I do not know where any of the other notices are, or the returns. Q. All you know about it is that Mr. Wright asked you to make these services, and you thought you

did? A. Yes, sir. Q. Mr. Hohn served some of them, and some of the bailiffs you had served some of them? A. Yes, sir. Q. You served some? A. A good many. Q. You could not particularize any particular person, and say that you served that person? A. No. sir."

This is all the evidence bearing on the question now before us. Defendant did not introduce the original notice, with the return thereon; nor did it in any manner attempt to account for its loss, if it was lost. It did not produce the appearance docket, nor explain its nonproduction. It is evident from the cross-examination of the sheriff that an original notice, with a return as to some twenty-five different persons, was in the hands of the defendant's attorneys, but for some reason it was not offered in evidence by either party. We may fairly assume that this return did not show service on the plaintiff. The decree against plaintiff was rendered on January 18, 1898, and this action was commenced May 17, 1899. It is hardly to be presumed that the original notices were lost during this interim. If there was an original notice showing service, defendant should have produced it; and, owing to the short time elapsing between the rendition of the decree and the attack made upon it, its failure to produce an original notice showing service on defendants, or to show the loss of such notice, should be regarded as a circumstance tending to show no service.

It is contended that there might have been substituted service, and that plaintiff has not negatived such notice. Suffice it to say in answer to this claim that plaintiff's husband, who, so far as shown, is the only person upon whom substituted service might have been made, in effect denies any such service. The competency of the sheriff's evidence, in the absence of proof of loss of the original notice, is doubtful, to say the least; and, in view of his cross-examination, little, if any, weight should be given it. We have nothing, then, but a decree reciting service on

plaintiff, and, as against that, explicit denials on the part of plaintiff and of her husband of the service of any notice. These denials are somewhat strengthened by the evidence as to the conduct of plaintiff and her husband with reference to the land, and by defendant's failure to account for or produce the original notice, the appearance docket, or the deputy sheriff or the bailiffs who might have served the notice, had one been given. While it must be conceded that the case is not as strong as it might be, yet, as the trial court had the witnesses before him, and possessed this advantage over us, we are not disposed, although the case is triable *de novo*, to interfere with its findings. Our conclusion is based largely on defendant's failure to produce evidence which, so far as the record shows, was subject to its command; and on the further fact that there is nothing, aside from the decree itself, in opposition to the denial of plaintiff and her husband of the service of any notice. The decree seems to be correct, and it is AFFIRMED.