[No. 1413.]

RHODES ET AL. v. BOARD OF PUBLIC WORKS OF THE CITY OF DENVER.

1. MANDAMUS.

Mandamus does not lie to control the exercise of discretionary powers with which public officers may be invested.

2. SAME.

Where any tribunal in which discretionary power is lodged has exercised its discretion so far as necessary in a particular case and has given its conclusions upon the facts before it, the performance of what remains to be done, being merely ministerial, may be compelled by mandamus.

3. DENVER CHARTER—PAVING PETITION—COMPETITIVE BIDDING.

The fact that a paving petition under the Denver charter designated, as the material to be used, a particular kind which was owned and

controlled by a single person, does not necessarily exclude competitive bids for the work.

4. Same—Board of Public Works.

By the charter of Denver, where the cost must be paid by the abutting owners, no paving can be ordered unless a petition for the purpose by them is first presented. The material desired to be used is to be determined and designated by the petitioners. If the material proposed be unfit, the board having in charge the interests of the public may reject the proposal; but, with authority to pass upon the question whether the material proposed could be properly used for paving, its discretion ends.

*Appeal from the District Court of Arapahoe County.*

Mr. James H. Brown, for appellant.

Mr. F. A. Williams, and Mr. G. Q. Richmond, for appellee.

Messrs. Thomas, Bryant & Lee, *amici curiæ.*

Thomson, P. J., delivered the opinion of the court.

On the 16th day of March, 1896, the following petition was presented to the board of public works of the city of Denver:

"PETITION FOR PAVING ON PENNSYLVANIA AVENUE.

"To the Honorable Board of Public Works and City Council of the City of Denver:

"The undersigned, your petitioners, owners of the frontage of lots and tracks of land described opposite their respective names, hereby, in pursuance of the charter of the city of Denver, passed by the ninth general assembly of the state of Colorado, respectfully petition your honorable bodies for the grading, paving and curbing of Pennsylvania avenue, including intersections, from the north line of Eighth avenue to the south line of Twelfth avenue, in the city of Denver. The wearing surface of the pavement to be

that known as Trinidad lake asphalt, and equal in quality to that laid on California, Stout, Glenarm and Nineteenth streets. We request that the wearing surface be one and one half inches in thickness, laid upon a bituminous binder not less than one inch in thickness, and that a hydraulic cement concrete foundation four inches deep be required; that you require a five-year guarantee; order the work on five installment plan, and we further request that if the lowest reliable and responsible bidder shall bid exceeding two dollars and twenty-one cents per square yard for the above paving, that all bids be rejected. We further request that the distance between the curbs be established at not more than forty feet nor less than thirty feet, leaving the balance for parking and sidewalk. And we will ever pray."

This petition purported to be signed by the owners of a majority of the frontage on Pennsylvania avenue, between the north line of Eighth avenue, and the south line of Twelfth avenue. Upon the presentation of the petition, the board of public works, at a meeting duly called and held, acted upon the petition, and made and entered the following order in respect thereto:

"*First:* That the right of petition of the owners of a majority of the frontage to be assessed for any particular material for the wearing surface, is not paramount to, but subject to, the charter provisions of the same clause requiring genuine competition between contractors, so that there can be at least two or more bids by individuals or companies in no manner connected with each other; and this petition is so specific as to render compliance with that part of the charter doubtful, in the mind of the board (although as to that matter this board has had no hearing or evidence), so that it does not feel warranted in putting the city to the expense of making preliminary surveys, and preparing specifications, which would necessitate a fruitless expenditure of the city's money, in case it turned out that in specifying said Trinidad Lake Asphalt as a wearing surface, there could not be genuine competition between contractors by at least two or more bids, as required by the charter.

"*Second :* That in the opinion of the board, it would be establishing a bad precedent to recognize a petition so specific as this one, since the board might hereafter be compelled to accept a petition for a wearing surface which would be a detriment instead of an improvement to the street; therefore it is

"Resolved, That while said petition is sufficient in all other respects, and the public necessity requires that said street should be paved, nevertheless, for said reasons and no other, that, until this question be otherwise determined by some binding judicial decision of the courts of this state, the petition be denied."

Thereupon the appellant, one of the petitioners, for himself, and on behalf of the others, instituted this proceeding, praying for a writ of mandamus commanding the board to accept and entertain the petition, and to proceed with the improvement of the portion of Pennsylvania avenue which it described, in manner and form as by the charter of the city of Denver provided.

The respondent demurred to the petition for a mandamus, on the ground that it did not state facts sufficient to constitute a cause of action against it, or to warrant the court in granting the relief prayed for. The demurrer was sustained and judgment rendered in favor of the respondent, from which error is prosecuted to this court.

The argument has taken a wide range, but we do not deem it necessary for us to follow it in all its ramifications. Upon the record before us, we think that the determination of a few questions, will dispose of the case in this court. The general authority of the board of public works, in the matter of public improvements, in so far as any question concerning it is involved in this record, is conferred by section 35, article 3 of the charter of the city of Denver, and is expressed as follows : "The board of public works shall have exclusive management and control of the construction, reconstruction and maintenance of all public and local improvements, including the grading, paving, curbing or otherwise improving of

the streets, alleys and other public places, except parks, of the city." Session Laws, 1893, p. 167.

The section specifically defining their duties in relation to the improvement of streets, in so far as they affect any question before us, are as follows:

## "ARTICLE VII.

### "PUBLIC IMPROVEMENTS.

" Section 1. The city shall have power to contract for and make local improvements, and to assess the cost thereof wholly or in part upon the property specially benefited, as hereinafter provided; all contracts for public improvements shall be awarded by the mayor, upon the recommendation of the board of public works, and the improvements shall be constructed by and under the direction of said board, in accordance with specifications prescribed by said board. In all cases when the cost of local improvements is to be assessed wholly or in part upon the property benefited, the same shall be constructed by independent contract or contracts; but other public improvements may be constructed by day's labor under the direction of the board.

" Sec. 2. Whenever the board of public works shall by resolution, order any of the local improvements herein mentioned, the same shall be authorized by ordinance; which ordinance shall be in form recommended by the board of public works by indorsement thereon, and shall not be subject to amendment by the city council.

" Sec. 3. The board of public works may order the grading, curbing and paving, or otherwise improving, of the whole or any part or parts of any street or streets, alley or alleys or streets and alleys in the city of Denver, or any one or more of the said improvements. In case of grading only, or of grading and curbing only, the improvements may include the necessary cross walks; and the board may thereafter, under the conditions herein prescribed, do such further grading as may be necessary in paving or otherwise improving the same area; Provided,

"*First.* Before ordering the improvements mentions in this section, or any of them, the board of public works shall adopt full details and specifications for the same, permitting and encouraging competition, determine the number of instalments and time in which the cost shall be payable, the rate of interest on unpaid instalments, and the district of lands to be assessed for the same, as in this act provided; and shall cause the engineer of said board to make a map of the district and an estimate of the total cost of said improvements, showing the approximate amounts that will be assessed upon each piece of real estate in the district; and no contracts shall be let for any amounts exceeding the estimates of the engineer.

"*Second.* The board shall by advertisement for twenty days in two daily newspapers of general circulation, published in the city of Denver, give notice to the owners of the real estate in the district, of the kind of improvements proposed, the number of instalments and time in which the costs will be payable, the rate of interest on unpaid instalments, the extent of the district to be assessed, the probable cost as shown by the estimates of the engineer, and the time, not less than thirty days after the first publication, when a resolution ordering the improvements will be considered by said board; that said map and estimates and all resolutions and proceedings of the board in the premises are on file, and can be seen and examined at the office of the board during business hours, at any time within said period of thirty days, by any person interested; and that all complaints and objections that may be made in writing concerning the proposed improvements, by the owners of any real estate to be assessed, will be heard and determined by the board before final action of the board thereon.

"*Third.* If owners of a majority of the frontage to be assessed, shall petition for paving, and for any particular materials for the wearing surface, then the improvements shall be ordered, and the material so designed shall be used; but no paving shall be ordered unless a petition for the same is

first presented, subscribed by the owners of a majority of the frontage to be assessed for the same; and in every instance the material shall be so described in the specifications, either by standard or quality, as will admit of genuine competition between contractors, so that there can be at least two or more bids by individuals or companies in no manner connected with the other." Session Laws, 1893, p. 201.

The order of procedure by the board in carrying into effect the foregoing provisions, is the subject of some contention. The learned gentlemen who appear specially as advisors of the court, insist that it is the duty of the board, in anticipation of petitions for paving, to comply with the requirements contained in the first and second subdivisions of section 3. In their view, until the paving districts have been created, the specifications adopted, the number of instalments, and the time of their payment, fixed, the estimates made, and the notice given, petitions for paving are premature, and cannot be entertained. If this position is correct, as the petition for a mandamus does not allege the performance by the board of any of those requirements, the demurrer was properly sustained. But to our minds such a construction of section 3 is not only unwarranted by its language, but would be productive of inconsistent and illogical situations. In the matter of providing for improvements upon streets, the board of public works moves itself, or it is moved from the outside. All improvements, except paving, are initiated by the board. But in the matter of paving it is powerless until a legal petition for the purpose has been presented. The second subdivision of section 3 provides that the notice by advertisement of the several matters which the board are required by the next preceding subdivision to resolve upon and determine, shall specify the kind of improvement *proposed*. This language contemplates a proposal for the improvements, previous to any action by the board; and that the board must act upon a proposition either originating with itself, or submitted by others seems to be a necessary conclusion from the nature of the duties which are

devolved upon it.   Whether the whole or a part of a street
shall be improved, must be in some manner resolved upon
beforehand.   If it is proposed to improve part of a street,
the part must be specified.   In like manner, whether the
design is to improve a whole street, or only a part, the nature
of the improvement must be embraced in the proposition.
Unless the location, extent and kind of improvement are
specified, compliance with the first subdivision would be
impossible.   It must be known whether the improvement is
to be made upon the whole of a street, or a part; and if a
part, where the limits of the part are, before the district of
lands to be assessed for the improvement can be defined;
and the engineer must know both the boundaries of the im-
provement, and their character, before he can make an esti-
mate of the cost of the work, or approximate the amount to
be assessed upon each piece of abutting land.   The improve-
ment must therefore be initiated by a proposal of some kind
from some source.   Except in the matter of paving, it eman-
ates from the board itself; but in the case of paving it comes
to the board from the outside.   In the latter case the pro-
posal comes in the form of a petition signed and presented
by those upon whom the burden of the assessment for the
work will fall; and the presentation of the petition is the
very first step to be taken.   It is an indispensable prerequi-
site condition to any action in the premises by the board.
When it comes, and the board is thereby advised of the lim-
its and location of the proposed improvement, it can deter-
mine the district of lands to be assessed for the work, and
adopt the necessary specifications.   The engineer, being in-
formed of the work to be done, and the character of the
materials to be used, is in possession of the data necessary
to an estimate of the total, and the distributive cost.   It is
evident to us that the duties required by the first and second
subdivision, are simply preliminary to the order provided
for by the third; and that they follow, and must in the
nature of things, follow, the presentation of the petition.
As this mandamus is asked only to compel the board to enter-

tain the petition for paving, the performance of duties which were dependent upon the acceptance of the petition, and which, as the petition was not accepted, were necessarily, not performed, could not very well be averred in the petition for a mandamus. The objection by the *amici curiæ*, that it did not contain those averments is without merit.

The point we have been considering is not made by counsel for the respondents. The objection which they urge and elaborate is the same one against which the board stumbled, and to that we shall now give our attention. Before proceeding to a consideration of this objection a few observations on the nature of the remedy by mandamus seems necessary, as explanatory of what we may say concerning the duties of the board. Mandamus will not lie to control the exercise of discretionary powers with which public officers may be invested; and if the denial of the petition for paving was the result of the exercise by the board of a judgment and discretion with which it was instructed by law, the judgment of the district court is unassailable. High on Extraordinary Remedies, § 42. The charter having confided to the board of the public works the exclusive management and control of the construction and maintenance of all public improvements, necessarily, in determining upon the improvements, their location, extent and character, it is clothed with some discretionary authority. What the limits of that authority are, wherein an exercise of its own judgment is contemplated, and wherein not, it is unnecessary for the purposes of this case to decide. But where any tribunal in which discretionary power is lodged, has exercised its discretion so far as the exercise is necessary in a particular case, and has given its conclusions upon the facts before it, what remains to be done to make its conclusions effective, is purely ministerial, and mandamus will lie to compel its performance. *Williams v. Saunders*, 5 Cold. 60; *State v. Cox*, 26 Minn. 214; *Cortleyou v. Ten Eyck*, 22 N. J. L. 45; *State v. Judge District Court*, 28 La. Ann. 45; *Lloyd v. Brinck*, 35 Tex. 1; *Ins. Co. v. Heirs of Wilson*, 8 Pet. 106.

Recurring to the proceedings of the board upon the paving petition, we find that it approved the petition throughout, except as to the manner in which it designated the material to be used, and the board's disapproval of that was grounded partly on a meaning which it assigned to the language of the third subdivision of section 3 concerning competition in bidding, and partly on a fear that an acceptance of the petition would be a precedent upon which it might afterwards be compelled to accept a petition for a wearing surface which would be a detriment instead of·an improvement. Its expressed judgment was that the petition was sufficient in all other respects, and also that public necessity required that the street should be paved. The only reason given for rejecting the petition is founded on an opinion the board had formed of the law applicable to the case, and an apprehension of some legal embarrassment which might follow its acceptance. The fear of establishing a bad precedent was groundless, because, being intrusted by the law with the interests of the public as to all matters within its cognizance, the board is fully authorized, and it would be its duty to reject a petition proposing a wearing surface from which detriment would result to the public. Within whatever limits its discretion may be confined, it can be exercised only in relation to facts which concern the public interests, or convenience, or necessity. It has no discretion to place a wrong interpretation on the law; and if a duty is otherwise obligatory upon it, it cannot shield itself, in a refusal to perform it, behind a legal opinion which it has erroneously formed. In *Williams v. Saunders, supra,* a county judge in Tennessee, refused to admit a will to record which had been proved before the register of wills in the city and county of Philadelphia, Pennsylvania; admitted to record according to the forms of law in the state of Pennsylvania; and an official and duly certified copy thereof presented to the county judge for record; on the ground that according to his construction of the law of Tennessee, relating to wills executed in other states, it was necessary to prove the will before him

as an original will. The county judge's construction of the Tennessee law was held erroneous, and a writ of mandamus awarded commanding him to admit the will to record, the court saying : " It follows, therefore, that, so far as the will in question purports to dispose of personal property, the probate court of the domicil of the testatrix had the exclusive jurisdiction to decide upon its validity or invalidity as a will of personal property ; and, as such, it was not open for contest in the courts of Tennessee. The judgment or decree of the ' register of wills,' being a tribunal of competent jurisdiction, and in the nature of a proceeding *in rem*, is necessarily conclusive and binding upon all persons interested in the property to be administered, until the same is reversed, annulled or set aside, by a proper proceeding in the judicial tribunals of the domicil of the testator. * * * The order, as set out in the pleadings, and the facts contained in the petition, and admitted in the answers, contain every essential fact necessary to authorize the county court to receive, file and record the authenticated copy of the will presented, and to issue letters testamentary thereon.

"Assuming, therefore, that the county judge acted as a judicial tribunal, and having found all the facts necessary to a judgment or decree, so that the judgment or decree would be nothing but the conclusion of law upon the facts, the entering up of the proper judgment must be regarded as in its nature, ministerial ; and in the absence of any other adequate specific remedy, a mandamus would be the proper method of redress."

The decision of this case, therefore, now turns upon the answer to be given to this question: " Was the paving material which the petitioners proposed, designated in the petition in such manner that specifications based upon it would admit of genuine competition between contractors, so that there could be two or more bids by individuals or companies in no manner connected with each other?" The opinion of the board seems to have been, and the argument of counsel is, that the designation of Trinidad lake asphalt was too

specific.    So far as the particularity with which the material was designated is concerned, leaving out of consideration a monopoly suggestion which we shall notice hereafter, we disagree with both counsel and the board.    In our opinion, for every purpose of genuine competition between bidders, there is and can be no such thing as too great particularity in the description of the subject concerning which competition is invited.    In order that bidders may really compete, they must have in mind precisely the same thing.    It is agreed on all sides that there are several varieties of asphalt, differing in quality, cost and fitness for paving purposes ; and if a contract for paving with asphalt is to be let, it is necessary to specify the particular kind of asphalt to be used, in order that in bidding, each bidder shall be on an exact equality with every other bidder.

But in behalf of the board the argument goes beyond this. Its theory is that if the paving material named in the petition was owned and controlled by a single person or company, there could be no competition, for the reason that others who might desire to compete for the contract could not do so, because the material would not be within their reach ; and, accordingly, it is said that it must appear in the petition for a mandamus, that the designated material could be the subject of competition in the sense that different bidders would be able to obtain it.    We think the presumption is that every article of commerce is within the reach of any person who desires it, and is able to pay for it ; and therefore, that an allegation that Trinidad lake asphalt could be obtained by the bidder to whom the contract should be awarded was unnecessary.    But even if it was the fact, as counsel intimate,—and we have nothing but their word on the subject,—that this asphalt was controlled by some man or combination of men, we are not prepared to say that, therefore, the persons interested may not lawfully petition for its use as paving material.    We are referred to some cases in which it was held that material, the right to which was a patented monopoly, could not be the subject of competition,

under a law requiring all work to be let by contract to the lowest bidder.   We do not think that these decisions are directly applicable to the case in hand, for the reason that they are based on statutes which invested the authorities letting the contract with the sole power to designate the material.   By the charter of Denver, the board of public works had no discretion in the selection of the material for paving.   The right to say what material shall be used belongs exclusively to the owners of the frontage assessed, and the board is bound to use that material, unless it clearly appears that the material suggested is unfit for the purpose, and that in the judgment of the board its use would be detrimental to the interests of the public.   If the material is rejected as being improper, then the owners may select other material, but in no case has the board authority to determine upon the material independently of the wishes of the owners.   It is possible that every kind of asphalt out of which a pavement can be constructed, is the subject of exclusive private ownership or control.   So far as this record discloses there is just as much authority for assuming this to be the case, as there is for assuming that Trinidad lake asphalt is so owned and controlled.   If such should turn out to be the fact, then, following the argument of counsel to its logical and inevitable conclusion, no pavement of asphalt could be laid in the city of Denver at all.   The same conditions are also possible with every other suitable paving material.   If everything of the kind should be the subject of a single monopoly, the paving provisions of the charter would be entirely ineffective and useless.   Whatever may have been decided in cases where the persons, out of whose pockets the cost of the improvement must come, have no voice in the selection of the material, an argument, the necessary result of which, in certain possible, and not altogether improbable, conditions of fact, would be not only to destroy a right which the charter has explicitly conferred upon those persons, but to prevent the streets from being paved at all, cannot be sound.   But we apprehend that the difficulty which counsel have con-

jured up is more imaginary than real. If the whole of some certain kind of property which is in demand, is owned by a single individual, it could be of no benefit to him to continue to hold it indefinitely. The presumption is that he desires to convert it into money, and that he will sell it to others. In a majority of instances, the successful competitor for a contract, is not himself the owner of the material necessary for the purposes of his contract, but must purchase it from the person or persons having it, and if there is only one such person, it must be purchased from him. It would be contrary to experience to assume that, whether the material is in one ownership or several, it cannot be purchased. The fact that some particular material in common use is the subject of exclusive ownership, furnishes in itself, no sufficient reason, why, with reference to that material, there could not be genuine competition between individuals or companies unconnected with each other.

The decisions cited by counsel for the respondent, and concerning which we have spoken, while in our opinion they are inapplicable, and criticism of them is therefore not called for, have not been acquiesced in elsewhere. In *Hobart v. The City of Detroit*, 17 Mich. 245, the question which we have just been considering was exhaustively discussed by Chief Justice Cooley. In an able and carefully prepared opinion, which covers the whole ground embraced in counsel's argument, that eminent jurist held that the fact that some material necessary to the performance of a public contract was the subject of a monopoly, did not, necessarily, have the effect of shutting out independent competition for the contract. A contract had been let to pave a street with the "Nicholson pavement." This pavement was a patented invention, and the right to lay it in Detroit was owned exclusively by a single firm. The charter of Detroit required that after specifications of the work should be advertised, the contract should be awarded to the lowest responsible bidder. The argument was that owing to the exclusive ownership of the right to lay the pavement, competition was impossible. But the court

was of a different opinion and upheld the contract. In *Barber Asphalt Co. v. Hunt*, 100 Mo. 22, a contract for paving with material to which the plaintiff held the exclusive right was sustained, although the charter provided that the work should be let out by contract to the lowest responsible bidder. We have not referred to the last two decisions as decisive authority in this case, but simply to show how respectable courts have regarded a question upon which considerable argument has been expended here. We agree with those courts, as far as their opinions have any bearing upon the question under consideration.

By the provisions of the Denver charter, where the cost must be paid by the abutting owners, no paving can be ordered unless a petition for the purpose by them is first presented. The petition designates the particular material desired for the wearing surface, and if the paving is done, that material must be used. This is the controlling feature of the charter provisions on the subject. The board cannot dictate the material. It is determined upon by the owners. If material unfit for paving purposes, or detrimental to the public interests, should be proposed, the board having in charge the interests of the public, might reject the proposal; but with the authority to pass upon the question whether the material proposed could properly be used for paving, its discretion ends. The subsequent steps it is required to take are simply means provided for carrying into effect the will of the petitioners. Its first duty, after receiving the petition, is to adopt details and specifications for the pavement, and in those specifications the particular material named in the petition must be so described by standard or quality as to admit of genuine competition between contractors. Whether an opportunity is afforded for such competition depends upon the language of the specifications, and not on that of the petition. While the specifications must describe the same material proposed in the petition, they need not do so in its exact phraseology, although there is no reason why they should not, if that is sufficiently expressive of standard or

quality. The standard or quality may be well and generally understood by some particular name which has been given to the material, and in such case the simple name by which it is called, would indicate its standard and quality, better and more intelligibly than some elaborate analytic description. The petitioners asked for Trinidad lake asphalt. It is not questionable that such asphalt is good paving material, and it seems to be conceded that in its constituents and quality it differs from every other variety of asphalt. The petitioners wanted that asphalt and not another kind of asphalt. The charter gave them the right to it, and there was nowhere any authority to deny it to them. The board, in the specifications, could describe it by its name, as indicative of its standard and quality, or could set forth its standard or quality in some other way, provided that identical asphalt was described. All other preliminary duties having been performed, the resolution ordering the pavement would be adopted, and an ordinance authorizing the improvement prepared and submitted to the city council. Upon the passage of the ordinance bids would be invited for the work, and each bid would be made with the understanding on the part of the bidder, that the wearing surface material to be furnished, would be Trinidad lake asphalt. " Trinidad lake asphalt " suggests no greater difficulty than diligent and ingenious parties have found, and, without doubt, will continue to find, in the way of the prosecution of meritorious and entirely legal public enterprises.

Upon the facts stated in the petition for a mandamus, the board should have entertained the paving petition, and it was error to sustain the demurrer.

The judgment is reversed.

*Reversed.*