A. J. MILLER, v. CITY OF OELWEIN, et al, and WILLIAM HORRABIN, Intervener, Appellant.

**Statutes:** ENACTMENT: PRESUMPTION. It will be presumed that the legal requirements essential to the validity of a statute were complied with in its enactment.

**Same.** Courts will not go behind the enrolled bills duly signed and deposited with the Secretary of State to ascertain what the law is; they constitute the ultimate proof of their regular enactment.

**Same.** Observance of the joint rules of the Legislature by its members and officers is a matter within its own control and discretion and not subject to review by the courts; and mere failure of the journals to show compliance with the requirements in the method of enacting a law is not conclusive that such requirements were not complied with.

**Municipal corporations:** PUBLIC IMPROVEMENT: STATUTES. Where the statutes provide a detailed method for proceeding with a public improvement an ordinance of the city is not necessary, but the city may proceed in conformity with the statute regardless of the provisions of its ordinances, unless the statute contemplates that an ordinance shall first be enacted.

**Same:** RESOLUTION OF NECESSITY: SUFFICIENCY. A resolution of necessity for a public improvement need not state that any particular material will be used in the construction of the work, but it will be sufficient in this respect if stating that one of several different kinds of described material will be used, to be selected by the city after bids are received; and even if not sufficiently specific it can be amended at the time fixed for its consideration and passage.

**Same:** WAIVER OF OBJECTION TO RESOLUTION. Where a property owner had notice of a contemplated public improvement and appeared to make objection before the council had taken any action with reference to proposals or letting the contract, and he made no objection to the sufficiency of the resolution of necessity, he could not thereafter complain that the council had no jurisdiction to proceed because of such defect.

**Same:** PLANS AND SPECIFICATIONS: WHEN TO BE FILED. The plans

and specifications of an improvement are for the purpose of arriving at a contract and not to advise a property owner of the nature of the proposed improvement, and they need not be on file with the city clerk until there has been an advertisement for bids.

**Same:** ORDINANCES: VETO.   Under the statute failure of a mayor to call a meeting of the council within fourteen days after the passage of an ordinance or resolution will render his attempted veto of the same ineffectual; and this requirement of the statute can not be obviated by directing the city clerk to inform the council of the attempted veto.

**Same.**  The statutes do not require that direction to the clerk to advertise for bids for a public improvement shall be by resolution of the council, and hence an attempted veto of such a resolution will not affect the validity of the proceedings.

**Same:** REJECTION OF BIDS: CONSTRUCTIVE FRAUD.   A city council can not rightfully reject a bid for the work of a public improvement which is responsive to its advertisement, and thus put itself in a position where it must accept a higher bid or postpone the letting of the contract; and by doing so its action amounts to a fraud upon property owners, and they may enjoin the letting of a contract to the higher bidder.

*Appeal from Fayette District Court.*—HON. A. N. HOBSON, Judge.

WEDNESDAY, JUNE 26, 1912.

ACTION in equity to enjoin the defendant city and its officers from entering into a contract with intervener, Horrabin, for the grading, curbing, guttering, and paving of a certain street under a bid of intervener accepted by the city council.   A permanent injunction was granted by the lower court, and the intervener, Horrabin, appeals. —*Affirmed.*

*Wade, Dutcher & Davis,* for appellant.

*Redmond & Stewart* and *M. D. Porter,* for appellee Miller.

*W. B. Ingersoll* and *E. R . O'Brien,* for other appellees.

McCLAIN, C. J.—The provisions of Code sections 810 and 813 as to street improvements contemplate a resolution of necessity or advisability and the letting of contracts for the work proposed to the lowest bidder, and by amendment to these sections (chapter 40, Acts 34th Gen. Assem.) the resolution and the bid may relate to one or more kinds of material proposed to be used, so that the city council may in accepting a bid and entering into a contract select the material to be used with reference to the cost of the work constructed of such material as compared with the cost of other kinds of material contemplated in the resolution and proposed by the bidder.

Under these provisions, a resolution of necessity was introduced into the council of the defendant city on May 26, 1911, and a notice thereof was caused to be published in accordance with the provisions of Code section 810 (which need not be further specifically noticed) that said resolution would be considered for passage by the city council at a meeting to be held on June 19th following, at which time owners of property subject to assessment of the costs of the street improvements contemplated in the proposed resolution might appear and make objection. On the date last above specified, the proposed resolution of necessity was duly passed with certain amendments, of which notice will be taken hereafter in proper connection. No objections were made at the meeting of the council at which the resolution was adopted, but on July 25th following the plaintiff with others owning property abutting on the street the improvement of which is involved in this controversy filed a written protest against letting a contract for brick, concrete, or any other noisy pavement. In the meantime, on July 6th, it had been ordered that certain streets specified in the resolution of necessity passed June 19th be improved in the manner specified

in said resolution of necessity by grading, curbing, guttering, and paving the same with one of the kinds of paving thereinafter described, and it was directed that proposals received for the construction of said improvement would be acted upon by the council on July 25th, the clerk being instructed to advertise for proposals for the construction of such improvement, the work to be commenced on or before August 10, 1911, and fully completed on or before January 1, 1912. On July 25th all the proposals were rejected. On September 11, 1911, the council passed another resolution instructing the clerk to advertise for proposals for the work contemplated in the original resolution of necessity adopted on June 19th, which proposals should be acted upon at a meeting of the council on the 16th day of October, and on September 20th the mayor returned this resolution to the city clerk, with the request that he convey to the council the information that such resolution was vetoed for certain reasons specified relating to the advisability of letting a contract under such resolution, with information that, if the council should see fit to pass such a resolution providing for the receiving of bids and letting the contract after the 1st of January, 1912, he would sign it. Disregarding this attempted veto, the council on October 17th proceeded to act upon the proposals made by this intervener and by one Ford, refusing to consider and rejecting certain portions of the bid of said Ford relating to bitulithic pavement on the ground that such bid was in this particular irregular, informal, and of uncertain meaning, but awarding to said Ford the contract for other portions of the proposed work, and accepting the bid of intervener Horrabin for bitulithic pavement on the street to which this controversy relates as the lowest sealed proposal received by the city for such pavement. At the same meeting the council amended the plans and specifications which had first been filed and approved by the council on July 5th. The decree of the

lower court enjoins the council from entering into a contract with intervener for the construction of bitulithic pavement on the street on which plaintiff's property abuts, in accordance with the plans and specifications adopted, under the acceptance of his bid.

The proposal to construct the improvement by the use of one or another of two or more kinds of material was unauthorized, unless chapter 40, Acts of 34th General Assembly, was a part of the law of the state.

1. STATUTES:
enactment:
presumption.

It is contended for appellee that this statute was not regularly adopted because the bill as passed by the two branches of the General Assembly was not signed by the President of the Senate in the presence of the Senate in accordance with the joint rules of the General Assembly, and it is stipulated that the Journal of the Senate fails to show that the President of the Senate signed such bill in its presence. On the other hand, it is stipulated that the enrolled bill now on file in the office of the Secretary of State bears the signature of the President of the Senate and of the Speaker of the House and of the Governor. The only requirement of the Constitution with reference to the signature of bills which have passed both houses is that they "shall be signed by the Speaker and President of their respective houses" and be approved by the Governor. Const. art. 3, sections fifteen and sixteen. Counsel for appellee have cited no authority for their contention that a bill passed and signed in the method provided for in the Constitution does not become a law if some joint rule of the Legislature relating to the method of procedure of the two houses has been violated.

However this may be, we must necessarily entertain the presumption that the essential requirements were complied with in the absence of evidence to the contrary.

The enrolled bills duly signed and deposited with the Secretary of State constitute the ultimate proof of

their regular enactment, and behind them it is impossible
for any court to go for the purpose of as-
certaining what the law is.   *Duncombe v.*
*Prindle,* 12 Iowa, 1; *Collins v. Laucier,* 45 Iowa, 702;
*Western Union Telegraph Co. v. Taggart,* 141 Ind. 281
(40 N. E. 1051, 60 L. R. A. 671).

2. SAME.

The observance of the joint rules of the Legislature
by its members and officers is a matter entirely within
its own control and discretion, and is not
subject to review by the courts.   *St. Louis*
*& S. F. R. Co. v. Gill,* 54 Ark. 101 (15 S. W. 18, 11 L.
R. A. 452).

3. SAME.

Mere failure of the journals to show compliance
with the requirements as to the method of enacting a law
will not be conclusive that such requirements were not
complied with.   *Commissioners v. Higginbotham,* 17 Kan.
62.

II.   An ordinance of the city which was in force
prior to the enactment of chapter 40, Acts of 34th General
Assembly, provided for proposals for street improvements
only in accordance with a resolution provid-
ing for a specified material, and it is con-
tended that, so long as this ordinance was
not amended, the council could proceed only
in accordance with its provisions, notwithstanding the
passage of the subsequent statute.   It is true that, where
the statute contemplates the enactment of ordinances pro-
viding for the method of making improvements, the city
can proceed only in accordance with such ordinances,
but, where the statute provide, in detail the method of
procedure, an ordinance is not necessary and the city
may proceed in accordance with the statutory provisions,
regardless of the provisions of its ordinances.   *Martin v.*
*Oskaloosa,* 126 Iowa, 680; *Hardwick v. Independence,* 136
Iowa, 481.

4. MUNICIPAL
CORPORATIONS:
public im-
provement:
statutes.

III.   The resolution of necessity introduced on May

26th of which notice was duly given did not expressly
state that the paving contemplated should be constructed

5. SAME: resolution of necessity: sufficiency:

of one of the kinds of material described
therein, selection to be made by the council
after bids were received, but it did specify
different kinds of paving, and, in view of the statute
above referred to, it must have been evident that the pro-
position was to have paving constructed of some one of
the various materials described.    The statute does not
require that the proposed resolution and notice thereof
state all the details of the contemplated improvement.    The
object is to apprise the public and persons interested of
its general character, and give opportunity for investiga-
tion and protest.    *Nixon v. Burlington*, 141 Iowa, 316.
Even if the proposed resolution was not sufficiently specific,
it could be amended at the time fixed for its consideration
and passage.    Code, section 810.

    The plaintiff had, in fact, notice of the contemplated
improvement, and he appeared to make his objections
thereto before the council had taken any action whatever

6. SAME: waiver of objection to resolution.

with reference to taking proposals or letting
contracts.    The notice of the proposed im-
provement had served its purpose, and the
council had passed a valid resolution of necessity.    He
can not now be heard to say that the action of the council
was without jurisdiction.    No such objection as that now
urged was suggested by him when he filed written objec-
tions to the proposed action of the council.    *Dubbert v.
Cedar Falls*, 149 Iowa, 489.

    IV.    The plans and specifications were not on file
with the city clerk until July 5th, but it was not necessary

7. SAME: plans and specifica- tions: when to be filed.

that they should be on file until there was
an advertisement for bids.    Such plans and
specifications are for the purpose of en-
tering into a contract, and not for the purpose of ad-

vising the property owners of the nature of the proposed improvement. *Nixon v. Burlington*, 141 Iowa, 316.

V. The mayor's attempted veto of the action of the council instructing the clerk to advertise for proposals in accordance with the resolution of necessity, and the plans and specifications was ineffectual for two reasons. In the first place, failure to call a meeting of the council within fourteen days after the action of the council was taken rendered his attempted disapproval nugatory under the provisions of Code, section 685. *Hardwick v. Independence*, 136 Iowa, 481. This requirement that a meeting of the council be called was not obviated by directing the city clerk to inform the council at some meeting not specified that he disapproved of the resolution.

8. SAME: ordinances: veto.

In the second place, no approval by the mayor seems to be necessary in case of a vote or direction to the clerk to advertise for proposals. The statute requires a resolution of necessity and an ordinance or resolution ordering the making of the improvement, but it does not require that directions to the clerk as to the steps necessary to be taken shall be by ordinance or resolution (see Code, sections 810-813, 823, 825, 867), and the council may act by vote without the approval of the mayor in cases where no ordinance or resolution is required. *Merchants' U. Barb Wire Co. v. Chicago, B. & Q. R. Co.*, 70 Iowa, 105; *Cascaden v. Waterloo*, 106 Iowa, 673. Although this action of the council which the mayor attempted to veto recited the previous resolution of necessity, its only function was to direct the clerk to advertise for bids, and as already suggested, there is nothing in the statute requiring that such direction be by resolution.

9. SAME.

Although it has seemed necessary and proper to notice the various grounds already considered on which, according to contentions for appellee, the court might

properly have based its action, the ground on which the court acted as indicated by its decree was that the letting of the contract to intervener "was a legal or constructive fraud." The facts on which such a finding was predicated were without doubt the rejection by the council of Ford's bid on bitulithic pavement and the acceptance of the bid of intervener at a higher price; he being the only bidder. The bid of Ford, if a valid bid for bithulitic pavement, was $1.90 per square yard, while the bid of intervener was for the same pavement $2.04 per square yard, and it is agreed that this difference in price would amount to $7,500 on the entire quantity of bitulithic pavement proposed to be laid.

*10. Same: rejection of bids: constructive fraud.*

The resolution and advertisement for bids related to "bitulithic, sarcolithic, mineral rubber or asphaltic concrete paving," "Portland cement concrete paving," and "brick block or creosoted wood block paving." Ford's proposal was in several divisions "for laying brick block pavement," "for laying creosote wood block pavement," "for laying asphaltic concrete pavement," "for laying sarcolithic or its equal pavement, using sarco or its equal," and "for laying bitulithic or its equal pavement, using bitulithic or its equal." The proposals of interevener were "for laying bitulithic pavement," "for laying sarcolithic mineral rubber pavement," "for laying asphaltic concrete pavement," etc. The alleged irregularity in Ford's proposal as to bitulithic paving was in offering only to lay "bitulithic or its equal pavement, using bitulithic or its equal." The contention for appellant is that the proposal of Ford with reference to "bitulithic or its equal pavement, using bitulithic or its equal," was indefinite, uncertain, and not responsive to the council's proposals, and therefore was properly rejected. If Ford were here insisting that the contract should have been awarded to him as the lowest bidder, we might well say that he was entitled

to no consideration. But the plaintiff as a property owner is insisting that the council might and should have accepted Ford's bid, and that the result of such acceptance would have been to make good his bid by laying bitulithic pavement at $1.90 per square yard, with a saving in the expense of the paving of $7,500, and that the council committed a legal or constructive fraud upon property owners by rejecting such bid, when, if it had been accepted, Ford would have been bound to construct bitulithic pavement at the rate specified. In other words, the contention for plaintiff is that the words "or its equal" were plainly surplusage in view of the advertisement in response to which Ford's bid was made. This contention we believe to be entirely sound. Ford knew that the council had no authority to advertise for "bitulithic or its equal pavement," and that it had not purported to do so, and, when he proposed to lay bitulithic or its equal pavement at a specified price, he authorized the council to accept his proposal for bitulithic pavement without condition. His bid was framed in his own terms, and he was bound to assume that the council might give it a construction which would render it valid and binding rather than a construction which would vitiate it and render it a farce. We think that there was no such doubt or uncertainty as to the effect of Ford's bid as to justify the council in refusing to consider it. The result of the council's action was to avoid the acceptance by it of Ford's bid as the lowest and the necessary acceptance of a higher bid by intervener, the only other bidder. This was evidently in its result a fraud on the property owners, for it compelled them to pay a higher rate for the pavement ordered. No doubt, the council had authority to accept intervener's bid as the lowest if there was no other bid proper for their consideration; *Dubbert v. Cedar Falls*, 149 Iowa, 489; *Saunders v. Iowa City*, 134 Iowa, 132; but the council committed a legal wrong in rejecting Ford's bid without

reasonable ground for doing so, and thus putting them in the position of being bound to accept a higher bid or postpone the letting of the contract.

No claim is made that there was actual fraud on the part of the council or its members or on the part of the intervener; but the result of the improper action of the council in rejecting Ford's bid amounted to a fraud upon plaintiff and the other property owners, and the lower court properly so found.

The decree is therefore *affirmed*.

DEEMER, J., takes no part.