North View Land Company, Appellant, v. City of Cedar Rapids, Appellee (and one other case).

**MUNICIPAL CORPORATIONS: Contract to Illegal Bidder.** A contract, entered into in good faith for the construction of a public sewer, and fully executed, will not be declared illegal because the same was let on a bid which was, in part, illegal, and consequently in excess of other bids, (1) when the illegality in such bid might have been eliminated by the council in letting the contract, (2) when the excess cost resulting from such illegality in the bid is, after the completion of the work, accurately ascertainable, and is eliminated in the making of assessments, and (3) when such latter elimination reduces the cost below all offered bids.

PRINCIPLE APPLIED: Sewer specifications called for two kinds of "excavations:" (1) "Rock excavation," which was defined as excavation requiring blasting; and (2) ordinary excavation, which was specifically defined as including *loose* rock. Blank bids corresponding to the specifications were furnished to bidders. One bid was in strict compliance with the blank. Another bid departed therefrom, to the extent of adding: "Loose rock excavation, $5.50 per cu. yd." Estimate of *loose* rock excavation was made by the council; and the latter bid being deemed the lowest, the contract was, in good faith, let accordingly. The estimate proved to be inadequate, and, by reason of such unauthorized bid, the assessment was increased a *defi-*

*nitely ascertainable* amount above the proper bid.  On appeal from an assessment, the court wholly rejected this illegal increase, and confirmed the remaining assessment.  This elimination reduced the cost below both bids.  The appellant was objecting to the assessment on an entire addition owned by him, and had, by his prior conduct, largely estopped himself from making objection.  *Held* that, as the council might have ignored that part of the bid for "loose rock," so also might the court, under the circumstances, eliminate the definitely determined excess in cost.

EVIDENCE:  Unallowable Basis.  Uncontradicted expert testimony as to the extent of benefits afforded to a lot by a public improvement is not persuasive, when such testimony reveals the fact that it is based on the unallowable assumption that no lot, under any circumstances, can be benefited by any such improvement in excess of a named arbitrary sum.

ESTOPPEL:  Denying Validity of Assessment.  One who actively encourages the construction of a public improvement for which his property may be assessed, has full knowledge of the proposed cost, makes no suggestion that such costs would exceed the benefits, and informs the public authorities that he "approves of the construction and consents to the usual statutory and legal assessment," estops himself to assert, after the improvement is completed, that the fair cost thereof is in excess of the special benefits which his property, as a whole, will receive.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

DECEMBER 14, 1918.

REHEARING DENIED APRIL 10, 1919.

APPEAL from an assessment of benefits in the construction of a sewer.  The appellant obtained a partial reduction of its assessments in the district court, but was otherwise unsuccessful in its contention.  From the order of the district court, it has appealed.—*Affirmed.*

*Deacon, Good, Sargent & Spangler,* for appellant.

*O. N. Elliott,* and *Redmond & Stewart,* for appellees.

Evans, J.—The specific objections filed by the appellant to the assessment are reducible to two:

(1)   That the assessments were wholly invalid and void, because the contract therefor was not let to the lowest bidder.

(2)   That the assessments are excessive, in that they exceed the special benefits conferred on the assessed property, and in that they exceed 25 per cent of the value thereof at the time of the levying.

The North View Land Company is the owner of a large number of lots, comprising the "North View Addition." Its enterprise consisted in platting certain territory into town lots and streets, and in improving the streets to some extent, with the view of rendering its property habitable and salable for residence property. The sewer in question was constructed through its property, and therefore abutted upon many of its town lots.

I.   The successful bidder for the sewer contract was W. A. Edgar, intervener herein. It is urged that he was not the lowest bidder. It appears that, in advertising for bids, the city council provided a blank form to

1. MUNICIPAL COR- which the proposed bids should conform.
PORATIONS : con-
tract to illegal The specifications on file classified "rock ex-
bidder.
cavation" as including only such rock as required blasting, in order to secure its removal, and provided that loose rock excavation should be deemed ordinary excavation. The form provided for a rate per cubic yard to be bid for "rock excavation." No such rate was to be bid for ordinary excavation. There were two bidders for the contract. Each placed his bid upon the various items indicated in the blank form. Edgar's bid for rock excavation was $6.50 per cubic yard. That of his competitor was $7.00 per cubic yard. To his bid upon this item, Edgar added the following: "Loose rock excavation, $5.50 per cubic yard." Taking account of Edgar's bid in this form, it re-

quired an estimate more or less uncertain of the number of cubic yards of loose rock excavation to be removed. Under the estimate made by the city council for the purpose of a comparison of bids, it was estimated that Edgar's bid was about $600 lower than the bid of his competitor. The contract was accordingly awarded to him. Upon final settlement, however, the actual computation of the number of cubic yards of "loose rock excavation" proved to be higher than the estimate, and the actual cost of the sewer, computed upon the bid as made, amounted to about $200 more than the bid of the competitor. By reason of the facts here stated, the appellant contends that the contract was wholly void, and that the city council had no power to levy any assessment whatever thereunder. The trial court found that the bid was in improper form, in so far as it contained the stipulation for $5.50 per cubic yard for loose rock excavation, and that this stipulation was void and of no effect. It appears, however, that the amount assessed by virtue of this stipulation was accurately ascertainable, and was made to appear; and the court eliminated the same from every assessment. This elimination reduces the cost of the improvement below both competitive bids. The real question between the parties is as to whether it was permissible thus to sever the legal from the illegal, and to enforce the contract in its purged form. Inasmuch as it was possible to do this accurately, under the evidence in this case, we see no sound reason why it may not be done. The city council could have made this separation in the first instance, and could have ignored the superfluous stipulation inserted by the bidder, and could have accepted the bid in its purged form. *Miller v. City of Oelwein,* 155 Iowa 706. There was no intentional fraud or bad faith in the acceptance of the bid by the city council. The contract has been fully performed, in strict accord with the specifications. Its benefits have inured to abutting owners. Sound reason dictates

that, if the bid could have been purged in advance by action of the city council, it ought not to be forbidden to do so after a full performance by the contractor. If the contract had been challenged in the inception of the proceedings, and before the contractor had constructed the improvement, the rule of conformity would have been applied with greater strictness than is justified after the full benefits of the construction have been conferred upon the property owners without objection. *Hedge v. City of Des Moines,* 141 Iowa 4, 13. Strict and technical as the requirements are in this class of cases, in order to impose liability upon private property for public improvements, yet we cannot wholly escape the operation of the principles of equity. To sustain the contention of the appellant would be, to say the least, highly inequitable.

In the present case, there is also an element of estoppel, which will be noted in the next paragraph hereof. We think the trial court properly held that the illegality of this contract was severable, and the extent thereof ascertainable; and that it properly enforced the contract in its purged form.

II. Were the assessments excessive? The appellant introduced the testimony of a number of witnesses who were real estate men of large experience. These witnesses, by their testimony, reduced the benefits con-

2. Evidence: unallowable basis.

ferred to an exceedingly small sum, as compared with the amount assessed. Appellant presses upon our attention the undoubted experience of the witnesses in question, and urges that their testimony should have great, if not controlling, weight with the court. One trouble, however, with these witnesses, great as their experience was, is that they had their own legal conception of how special benefits ought to be computed. This conception was, in substance, that 50 cents a frontal linear foot was the maximum benefit that could be conferred. This legal

conception has been long ago repudiated, both by statute and decision. If the views of these witnesses were to be accepted, then the sewer scheme was unjustified from the beginning, for the reason that its cost would greatly exceed its benefits.

This appellant had full knowledge of the in-
3. Estoppel: deny- ception of the sewer scheme, and abetted and
ing validity of
assessment. encouraged it. It had knowledge of the bid for its construction before it was accepted. There was no suggestion then that the cost would exceed the benefits. This is a proper circumstance for our consideration, in weighing the present testimony offered by the interested parties now. It further appears that this same appellant was actively instrumental in having this sewer scheme instituted and prosecuted. At a prior time, it had built an unconnected sewer on Avenue B of its addition, and procured the city council to adopt it as a public improvement, and to make assessments of the cost thereof upon the abutting property in the usual statutory method. This was done by giving its waivers as owner of the abutting lots, and by procuring other waivers when necessary. When the present scheme was under the consideration of the city council, the appellant, by its secretary, addressed a letter to such council, stating that:

"The company will approve of the construction of such sewer, and consent to the usual statutory and legal assessment thereof."

We think this letter should be deemed as in the nature of an admission by the appellant that it deemed the fair cost of such a sewer as not in excess of its special benefits to the addition; and that it should be quite estopped from taking a different attitude now. True, such former attitude would not estop the appellant from attacking the assessment of a particular lot as being excessive. But the attack made by the appellant is consistent in its application to all the lots, and if sustained, would reduce the assessment far

below the cost. Our conclusion is that the testimony of appellant's expert witnesses on this question of special benefits is neither controlling nor persuasive. The trial court was justified in finding the greater weight with the testimony for appellees.

What we have here already said is also quite decisive of the contention that the assessment exceeded 25 per cent of the value of the lots. This claim is not confined to a particular lot or lots, but is directed with quite equal force to all the lots. Of course, the question of the value of lots in a new addition is more or less speculative and tentative. Its ultimate answer is in the success or want of success of the enterprise. It is not claimed that this enterprise has proven a failure. It is still a going concern. The testimony of the witnesses on behalf of the appellant is not at all consistent with the attitude of the appellant in its original encouragement to the enterprise. Its weight is, therefore, greatly diminished by this inconsistency. We reach the conclusion that the district court extended to the appellant all the relief to which it was entitled. Its decree is, therefore,—*Affirmed.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.