IOWA ELECTRIC LIGHT & POWER COMPANY, Appellant, v. INCORPORATED TOWN OF GRAND JUNCTION et al., Appellees.

No. 42018.

SEPTEMBER 26, 1933.

REHEARING DENIED DECEMBER 14, 1933.

Donnelly, Lynch, Anderson & Lynch, Salinger, Reynolds & Meyers, and Graham & Graham, for appellant.

O. C. Metzger, George A. Rice, and Clark, Byers, Hutchinson & Garber, for appellees.

KINTZINGER, J.—The plaintiff, through its predecessors, acquired an electric light and power plant, and distribution system, in the town of Grand Junction, Iowa. The original franchise to operate the plant and system was granted to one E. A. Caswell in 1894. His rights therein were acquired by plaintiff or its immediate predecessors in 1914. The original franchise expired in 1919. This franchise has never been renewed or extended, and no new franchise has ever been secured by the plaintiff company. The plaintiff company or its predecessors after the expiration of the franchise continued to operate the light plant and system at sufferance.

Defendants contend that plaintiff is occupying the streets, alleys and public places in the town of Grand Junction without any franchise, license, or authority therefor, and seeks to compel plaintiff to remove its plant and distribution system from the town.

In 1932 the defendant town took steps to purchase a new municipal lighting plant, under the provision of chapter 312 of the Code (section 6127 et seq.).

Plaintiff claims the contract is unconstitutional because the contract would create a municipal debt exceeding its constitutional limit, in violation of section 3 of article XI of the State Constitution.

Plaintiff also contends that the contract entered into between the town and Fairbanks Morse & Company is invalid because it was entered into without complying with the statutory provisions requiring competitive bidding.

I. It may be conceded, for the purpose of this case, that all proceedings taken by the town were regular up to the time of receiving bids and letting the contract. It is contended, however, that the contract entered into with Fairbanks Morse & Company was invalid because there was no competitive bidding; that the bid

submitted by that company was based upon its own specifications, and not upon those of the town; that the company's specifications varied so materially from the town's specifications that the bidding was noncompetitive and contrary to statute.

Section 6134-d4 of the Code provides that:

"Before any municipality shall enter into any such contract as provided in section 6134-d1, for the establishment of a plant, or for the extension or improvement of an existing plant, to cost five thousand dollars or more, the governing body proposing to make such contract shall give thirty days' notice of its intention to adopt proposed plans and specifications and proposed form of contract therefor, by publication once each week for two consecutive weeks in some newspaper of general circulation in the municipality and also in some newspaper of general circulation in the State of Iowa, the first publication of which shall be at least thirty days prior to the time of hearing fixed in said notice."

Section 6134-d5 provides:

"Such notice shall state as nearly as practicable the extent of the work; the kind of materials for which bids will be received; when the work shall be done; the time when the proposals will be acted upon; and shall also provide for competitive bids for the furnishing of electrical energy, gas, water or heat."

This statute was undoubtedly enacted for the purpose of obtaining competitive bidding and to enable municipal corporations to secure the best bargain for the least money. Such a statute clearly required competitive bidding. McQuillin on Municipal Corp. (2d Ed.) vol. 3, section 1309; Colorado Central Power Co. v. Municipal Power Dev. Co. (D. C.) 1 F. Supp. 961, 965 and 966; Lee v. City of Ames, 199 Iowa 1342, 203 N. W. 790; Urbany v. Carroll, 176 Iowa 217, 157 N. W. 852; Rhodes v. Board of Public Works of Denver, 10 Colo. App. 99, 49 P. 430, on page 434; 65 A. L. R. 837 note; Chicago Sanitary District v. McMahon & M. Co., 110 Ill. App. 510.

In the case of Rhodes v. Board of Public Works of Denver, 10 Colo. App. 99, 49 P. 430, on page 434, the court said:

"In our opinion, for every purpose of genuine competition between bidders there is and can be no such thing as too great par-

ticularity in the description of the subject concerning which competition is invited. In order that bidders may really compete, *they must have in mind precisely the same thing.* [Italics ours.] It is agreed on all sides that there are several varieties of asphalt, differing in quality, cost, and fitness for paving purposes; and, if a contract for paving with asphalt is to be let, it is necessary to specify the particular kind of asphalt to be used, in order that, in bidding, each bidder shall be on an exact equality with every other bidder."

In the case of Urbany v. Carroll, 176 Iowa 217, 222, 157 N. W. 852, 854, a form of contract, together with the plans and specifications, was on file with the city clerk, and bidders were required to use a form provided in bidding. In that case we said:

"The authorities agree that there must be a substantial compliance with the proposal to warrant the consideration of the bid, else bidding would not be on equal terms, *and the advantages of competition lost. Unless the bid responds to the proposal in all material respects, it is not a bid at all, but a new proposition.*" (Italics ours.)

██  If the contract entered into with Fairbanks Morse & Company did not call for a construction of the plant in substantial compliance with the "Town's specifications" there was no competitive bidding. It was simply a new proposition, and if they were materially different from the town's specifications there would be no competitive bidding, and a contract based thereon would be invalid.

A review of the evidence is necessary to determine whether Fairbanks Morse & Company's specifications complied substantially with the town's specifications. The following differences between Fairbanks Morse & Company's specifications and the town's specifications are shown by the evidence:

(1) A correct interpretation of the town's specifications clearly shows that they call for a 4-cycle engine, while Fairbanks Morse & Company's specifications and contract provide for a 2-cycle engine. The cost of a 4-cycle engine as required by the town's specifications is $13,500, which is 10 per cent higher than the cost of a 2-cycle engine, specified in Fairbanks Morse & Company's contract. The engine called for in the town's specifications would cost over $1,200 more than the engine called for in Fairbanks Morse & Company's specifications.

(2) The town's specifications call for two generators of 170 K. W. each, while Fairbanks Morse & Company's contract specified two 155 K. W. generators.

The town's specifications call for "three phase, 60 cycle, 2300 volts and shall be rated at 185 K. W. or 170 K. W. as the case may be at 80% power factor," while the generators specified in Fairbanks Morse & Company's specifications are 155 K. W. power factor, 80 per cent, 40 cycle, 2,400 volts.

The generators called for in the town's specifications would cost $1,500 more than the generators called for in Fairbanks Morse & Company's contract and specifications.

(3) Torsional vibration is a cause for the rejection of an engine unit under the "Town's specifications", while under Fairbanks Morse & Company's contract and specifications only an 8-hour test is required, which is wholly insufficient to demonstrate whether there is such torsional vibration as to warrant rejection or not.

(4) One of the items required in the equipment of the generators called for by the town's specifications is that the generators be equipped with thermometers for determining the temperatures of the generators when operating. This item in the equipment of the generators is omitted in Fairbanks Morse & Company's contract and specifications. The cost of the generators with this item included as called for in the town's specifications would be about $295 more than the generators called for in Fairbanks Morse & Company's contract without this equipment.

(5) The engine governor required in the town's specifications contemplates what is known as a high-speed centrifugal type of governor, while the governor in the company's specifications is of the inertia shaft type governor.

This difference is that the high-speed governor contemplated in the town's specifications calls for a governor of greater sensitivity and capacity for regulation than the one in Fairbanks Morse & Company's specifications. The one specified in the town's specifications would cost more than the one proposed by Fairbanks Morse & Company.

(6) The town's specifications require a compound wound exciter, while Fairbanks Morse & Company's specifications simply call for a shunt wound exciter. The compound wound exciter would cost more and is better than a shunt wound exciter.

(7) The town's specifications describe in detail the type, kind, manner of construction of the pistons, and material of which they are to be made, while Fairbanks Morse & Company's contract and specifications contain no reference thereto. The cost of construction as required by the town's specifications would be more than Fairbanks Morse & Company's requirements.

(8) The town's specifications call for a cooling system in which the lubricating oil would pass through a cooler and a twin strainer, while Fairbanks Morse & Company's contract makes no provision for an oil cooler or twin strainer.

(9) The town's specifications require cylinder liners in the blocks, and also specify the manner of their construction, while Fairbanks Morse & Company's specifications do not call for such cylinder liners.

The variations between the town's specifications and Fairbanks Morse & Company's specifications are so numerous and there is such a difference in the cost that it can hardly be said they are a substantial compliance therewith.

As stated, section 6134-d5 requires competitive bidding. Competitive bidding means that all contractors make bids based upon the same or at least substantially similar specifications. If they bid upon different specifications there would be no competitive bidding.

"It is a general rule that the bid of one proposing to contract for the doing of a public work must substantially conform to the specifications in the proposal. Since there is no dispute about the rule itself, and the practical question in the cases is whether there was substantial conformity or a material variance." 65 A. L. R. 836 note.

See, also, State v. York County, 13 Neb. 57, 12 N. W. 816; Hornung v West New York, 82 N. J. Law 266, 81 A. 1116; Overshiner v. Jones, 66 Ind. 452; Miller v. City of Oelwein, 155 Iowa 706, 136 N. W. 1045; North View Land Co. v. Cedar Rapids, 185 Iowa 1032, 169 N. W. 644; Urbany v. Carroll, 176 Iowa 217, 157 N. W. 852.

In the case at bar, the town itself prepared specifications for the construction of the lighting plant. Bids were invited upon these specifications. There were three other bids, all of which were based upon the "town's specifications". If the Fairbanks Morse & Com-

pany's bid was based upon specifications substantially similar to the town's specifications, it might be said the bidding was competitive. If their specifications were not substantially similar thereto, there was not and could not have been any competitive bidding.

The purpose of the statute is to require competitive bidding. If no such bidding was had upon the proposed improvement, the town had no right to enter into a contract therefor. As the statute provides for competitive bidding, the town is not authorized to enter into such a contract without competitive bidding. The right of a town to enter into a contract is derived from the statutes. There is no statutory provision authorizing the town to enter into such a contract without first securing competitive bidding thereon. To enter into such contract without statutory authority would render it invalid. Van Eaton v. Town of Sidney, 211 Iowa 986, 231 N. W. 475, 71 A. L. R. 820; Christensen v. Town of Kimballton, 212 Iowa 384, 233 N. W. 789, 236 N. W. 406.

In Van Eaton v. Town of Sidney, 211 Iowa 986, loc. cit. 989, 231 N. W. 475, 476, 71 A. L. R. 820, we said:

"Regardless of what the law may be in other states, it is settled in this state that a municipality has no inherent power to make a contract of this kind. A municipality is wholly a creature of the Legislature, and possesses only such powers as are conferred upon it by the Legislature; that is, (1) such powers as are granted in express words; or (2) those necessarily or fairly implied in or incident to the powers expressly conferred; or (3) those necessarily essential to the identical objects and purposes of the corporation as by statute provided, and not those which are simply convenient. 1 Dillon on Municipal Corporations (5th Ed.) section 237; Clark v. City of Des Moines, 19 Iowa 199, 87 Am. Dec. 423; City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455; Heins v. Lincoln, 102 Iowa 69, 71 N. W. 189; State v. Barker, 116 Iowa 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; State v. Des Moines C. R. Co., 159 Iowa 259, 140 N. W. 437, 443."

In City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455, Judge Dillon said:

"Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and

control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the State, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the legislature. This plenary power on the part of the legislature over public corporations, saving vested rights of property and of creditors, is a doctrine so well settled that it is unnecessary to refer to more than a few cases asserting it."

In the Van Eaton case the city had power to purchase an electric light plant, but under the law at that time it had no power to pledge or mortgage the plant to secure the indebtedness. So in this case the town had a right to purchase the electric light plant, but under the statute it had no right to do so without first advertising for and securing competitive bids.

The evidence shows that Fairbanks Morse & Company failed to bid upon the town's specifications altogether, and other bidders had no opportunity to and did not bid upon Fairbanks Morse & Company's specifications, because no bids had been invited thereon. It is our conclusion that Fairbanks Morse & Company's specifications varied so materially from the town's specifications that there was no competitive bidding. The contract was therefore invalid, and plaintiff's application for an injunction should have been sustained.

II. Defendant by cross-petition alleges that the plaintiff is occupying the streets, alleys, and public places in the town of Grand Junction without any authority therefor; that the franchise obtained by its predecessor has long since expired; and that the plaintiff company and its predecessor have ever since continued to operate its electric light and distribution plant upon the streets, alleys, and public places of Grand Junction without obtaining a new franchise or a renewal of the old one. The evidence shows that the plaintiff company is operating its plant in Grand Junction without a franchise or a renewal thereof; that plaintiff was occupying the streets, alleys, and public places of Grand Junction simply by sufferance; and after the expiration of said franchise it was at all times subject to removal from the streets, alleys, and public places of the town.

Section 6131 of the Code provides that:

"No such works or plants shall be authorized, established, erected, purchased, leased, or sold, or franchise granted, *extended, renewed, or amended,* or contract of purchase provided for in the preceding section shall be entered into *unless a majority of the legal electors voting thereon vote in favor of the same.*" (Italics ours.)

It is contended by plaintiff that there was an adjudication of this question by the district court in the case of Iowa R. R. & Light Corporation v. Incorporated Town of Grand Junction, under which it was adjudged that the plaintiff company had a license, franchise, or other right to occupy the streets, alleys, and public places of Grand Junction and to furnish electrical energy to said town and its inhabitants.

We have examined the findings of the court and the decree entered in that case, and from such examination find that the lower court therein made no such finding on the issue as to whether plaintiff had a license, franchise, or other right to occupy the streets, as alleged, and it is therefore our conclusion that the decree entered in that case was not an adjudication of that issue.

Under the statutes of this state the plaintiff's franchise could not be extended, amended, renewed, or enlarged in any other manner except by complying with the provisions of the statute, calling for an election of the people to approve the same. This was not done. Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 254, 91 N. W. 1081, State ex rel. Fullerton v. Des Moines City R. Co., 159 Iowa 307, 140 N. W. 437.

In the case of Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, loc. cit. 254, 91 N. W. 1081, 1088, we said:

"We think it should be said that, while the defective grant of a franchise which is authorized by law may, when acted upon and used by the grantee, afford a colorable right to such privilege, yet a grant for which there is no authority in law, or which is in violation of law, cannot be made the basis of a color of right * * * The exception to the rule which permits the enforcement of an ultra vires contract which has been partly performed is not recognized in cases where the power to make the contract does not exist under any circumstances, or is expressly forbidden by statute. * * * It follows of necessity from these principles, if not, indeed, as a matter of sound public policy, that a contract or grant made by a

municipal corporation without any authority of law, and accepted by the grantee with full knowledge of its unlawful character, cannot be held to give a color of right to the privilege thus attempted to be granted. To hold that color of right is to be thus obtained is to enable city officials to ignore with impunity every statutory limitation upon municipal power, and impose upon the people burdens which the law expressly provides shall never be created."

The court further said in that case:

"The claim of actual possession and use of the franchise by the plaintiff does not, as we view it, add to the strength of its position. If we should concede for the purpose of argument that long possession and use of a franchise which the city has no power to grant would constitute such a color of right as cannot be collaterally attacked, the record in this case does not disclose facts for the application of that principle. It is true that at the time this action was begun the plaintiff had been furnishing the City of Cedar Rapids and its people with water for 25 years, but such service had been rendered under a contract which, as we have held, was limited to that period, and the money and labor expended in constructing, maintaining, and operating the works must be held to have been expended with reference to the term for which it held a valid grant. Neither can there be any such acquiescence or waiver by the city as will prevent or estop it from denying the validity of an act beyond the scope of its municipal powers."

Section 6131, hereinabove quoted, shows the manner in which a charter can be extended or renewed. No such steps were ever taken by the plaintiff or the town. It is therefore our conclusion that the plaintiff company is using the streets, alleys, and public places of the town of Grand Junction without right or authority of any contract, franchise, charter, or grant permitting it so to do. It is our conclusion that the plaintiff company is now occupying said streets, alleys, and public places in the town of Grand Junction without any color of right or authority, and that the plaintiff's electrical system in the streets, alleys, and public places of the town of Grand Junction is subject to removal therefrom by the defendants in this case.

The evidence shows that the plaintiff has been given notice to quit and to remove its properties from the streets, alleys, and public places of the town. This court, however, as did the lower court,

finds that plaintiff's electrical distribution system consists of property of considerable value, and that plaintiff should be given a reasonable time to secure a new franchise to operate its distribution system, or remove it from the streets, alleys, and public places of said town.

This court also finds that four months from the time of the filing of this opinion will be a sufficiently reasonable time to remove its electrical distribution system from the streets, alleys, and public places of the town of Grand Junction. It is therefore hereby ordered that the decree of the lower court upon this branch of the case be and is affirmed, except that the time shall run from the date of the filing of this opinion.

The judgment and decree of the lower court is therefore reversed in part and affirmed in part, and the case is remanded, with instructions to enter a decree in harmony herewith.—Reversed in part; affirmed in part.

All Justices concur, except ALBERT, C. J., who took no part.